**Charles A. JOYCE, Joseph C. Matesic, Richard A. Samer and Vernon P. Taylor, for themselves and all other persons similarly situated, Plaintiffs,**

v.

**CURTISS–WRIGHT CORPORATION, Defendant.**

**No. CIV–89–1599C.**

United States District Court, W.D. New York.

Dec. 17, 1992.

Law Offices of E. Joseph Giroux, Jr. (William E. Grande, of counsel), Buffalo, NY, for plaintiff.

Saperston & Day (Thomas S. Gill, of counsel), Buffalo, NY, for defendant.

## DECISION and ORDER

CURTIN, District Judge.

## BACKGROUND

This class action is brought by retirees of defendant Curtiss–Wright Corporation ("Curtiss–Wright"). Plaintiffs bring suit under section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The suit stems from a unilateral decision made by Curtiss–Wright to terminate health insurance benefits for retirees of the company between May 1 and July 27, 1987. The central question in this case is whether these health insurance benefits were vested for the life of plaintiff retirees. If the benefits were vested, they could not be terminated unilaterally by defendant. If

they were not vested, then the suit must be dismissed. Both sides have moved for summary judgment, arguing that the intent of the parties in contracting for retiree health benefits may be decided as a matter of law.

## FACTS

In 1968, Curtiss–Wright and the Steelworkers International Union of North America, AFL–CIO, CLC, Local 4533 ("Steelworkers") negotiated a collective bargaining agreement ("contract") which gave paid health insurance to retirees. The contract stated:

> Group Life, Hospital and Surgical, and other applicable insurance benefits are covered in a separate Insurance Agreement which will be attached to and become part of the Agreement as Exhibit 'A'.

The attached group insurance agreement ("insurance agreement"), provided coverage for retirees as follows:

> 3. *Post Retirement Group Health Insurance*—Effective November 4, 1968, this insurance, which was formerly referred to as Post Retirement Group Hospital–Medical–Surgical Insurance, will be provided for employees receiving or becoming entitled to receive pension payments under The Curtiss–Wright Pension Plan by reason of the normal, automatic, early or disability retirement provisions of such Plan. This insurance will be identical to that described in the terms and provisions in paragraphs 1(A), 1(B), 1(C), 1(D), 1(E), 1(F), 1(I), 1(J) and 1(K) of this Exhibit B with the following additional provisions: ....

Item 28, Exh. 1 at B–11. The "additional provisions" spelled out three conditions under which health coverage would not be provided: (1) to the extent a retiree was covered under another group policy, including Medicare; (2) in the event the retiree moved to a foreign country; and (3) in the event the retiree died. *Id.* at B–11–12.

The 1968–71 contract also contained a general durational clause which stated: "The terms and conditions of this Agree-

ment shall continue in effect until midnight, October 31, 1971." Item 28, Ex. 7. A similar clause with the same date appeared at the end of the supplementary Insurance Agreement. Item 28, Ex. 1 at A–4.

With one brief exception in 1984, the Steelworkers and Curtiss–Wright entered into three-year contracts from 1968 to 1987. The insurance agreement clauses concerning retiree benefits remained essentially unchanged between 1968 and 1984, providing continuous coverage for the retirees. *See* Item 28, Exh. 2 at B–17–18, Exh. 3 at B–17–18, Exh. 4 at B–18–19, Exh. 5 at B–18–19; and Item 40, Exh. L (citing Item 28, Exh. 7 at 51). In the 1984–87 insurance agreement, the language was changed to limit retiree health coverage for persons retiring after October 31, 1983, to those who had attained at least fifteen years of credited service. Item 40, Exh. H at B–14. The expiration date was changed for each agreement, although the 1971–74 and 1974–77 agreements simply stated that they "shall continue in effect until midnight," without providing a date or period at the end of the sentence. *See id.*

In 1974, the contract expired without the parties' reaching a new agreement, and the active employees went out on strike. At that time, Curtiss–Wright notified the active employees of its intention to cancel their benefits but never attempted to cancel the benefits of the retirees. Item 39, ¶ 11.

Curtiss–Wright made both written and oral representations concerning the nature of retiree health benefits between 1968 and 1987. A written proposal for retiree health benefits offered to the Steelworkers during the 1968 contract negotiations stated:

> All current retirees and their dependents and all future retirees and their dependents will be covered for Hospital Surgical Medical Insurance benefits fully paid by the Company. Such benefits will be the same as the benefits for active employees, except for drugs, dental care and major medical. For retirees and de-

pendents over age 65, the benefits will be integrated with Medicare Parts A and B. Item 40, Exh. D.

Defendant also published a series of summary plan descriptions ("SPDs"), many of which appear to be undated. One undated pension plan SPD states, under the heading "Medical Benefits:" "Medical benefits are not provided by the Curtiss–Wright Pension Plan and are not vested benefits, thus such benefits are subject to modification or termination." Item 29, Exh. 22 at 7. Another booklet, entitled "Your Plan of Group Post Retirement Health Insurance" and stamped 6/70, states under the heading "Termination of insurance:" "Your insurance, or that of a dependent, will terminate in the event of your death, or if the Group Policy terminates." Item 29, Exh. 24 at 8. Yet another undated booklet entitled "Employee Benefit Plan," states: "During your retirement, you and your covered dependents will have the same Basic Health Care coverage as you had while active at no cost to you." Item 29, Exh. 20 at 53. This booklet goes on to provide:

> Plan Continuation—The Company expects and intends to continue this Plan indefinitely but reserves the right to end or amend it. The benefits in this booklet are of a contractual nature, and they may be modified from time to time or terminated as a result of contractual negotiations.
>
> This booklet is not a contract and contains only a general description of your benefits under the Curtiss–Wright Health Care Plan. These benefits are subject to the terms, conditions, and limitations of the Master Contracts issued to your group by the Claims Service Organizations, and to the provisions of applicable State Laws.

*Id.* at 58. Finally, beginning in 1979, Curtiss–Wright sent summary annual reports to each participant in the company health plan, including retirees. Those annual reports contained the following paragraph:

> The medical benefits plan under which you are now covered is provided to you under the terms of a Collective Bargain-

ing Agreement. Accordingly, termination of the Collective Bargaining Agreement for any reason, shall result in termination of the medical coverage provided by such agreement.

Item 29, Exs. 25–35. Apparently, the Steelworkers never objected to these reports. Item 27, pp. 21–22.

The Steelworkers claim they assured the retirees that their health benefits would continue for life in the presence of Curtiss–Wright managers *without ever being contradicted.* Item 39, ¶ 10. Plaintiffs also provide affidavits from union members and retirees whose participation in contract negotiations led them to believe that health insurance coverage would last for the lifetime of the retiree and not terminate with the expiration of any particular contract. Items 36; 38; & 39, ¶¶ 8, 9, 12.

The 1984–87 contract expired on May 1, 1987, without completion of negotiations on a new contract. A strike or lockout ensued, and Curtiss–Wright terminated all benefits to both active employees and retirees. All benefits were reinstated on July 27, 1987, when the strike/lockout ended with the successful completion of a new contract.

On August 25, 1987, the Steelworkers filed a grievance protesting the termination of the Retirees' health insurance during the strike/lockout. They claimed that the insurance was an integral part of the retirement package and was vested with the retirees. Curtiss–Wright rejected the retirees' right to file a grievance and refused to proceed to arbitration. The company also claimed the grievance was untimely and not sustainable on its merits because of the general durational clause in the Insurance Agreement and a rejection by management during the last negotiations of a Steelworkers counter-proposal to exempt the cessation of retirees' insurance coverage during a work stoppage or strike. Item 40, Exs. E & F.

After the grievance submitted on their behalf was rejected by Curtiss–Wright, the retirees filed this instant suit.

## DISCUSSION

The single issue in this case is whether Curtiss–Wright and the Steelworkers contracted for vested health insurance benefits for retirees of the company. Both parties have moved for summary judgment, asking the court to construe intent as a matter of law from the language of the contract and extrinsic evidence.

■■■ For either party to prevail on a motion for summary judgment, it must be shown that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one "that might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The inferences drawn from the underlying facts contained in the moving party's materials must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Uncertainty as to the true state of any material fact defeats the motion." *United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982) (citation omitted).

■■■ ERISA provides for automatic vesting of pension benefits but does not extend this protection to welfare benefits. *Massachusetts v. Morash,* 490 U.S. 107, 119, 109 S.Ct. 1668, 1675, 104 L.Ed.2d 98 (1989). Therefore, if the contract did not vest the retirees' health insurance benefits, there is no dispute that defendant was entitled to cancel them during the period between May 1 and July 27, 1987, when no collective bargaining agreement was in force. On the other hand, parties to a collective bargaining agreement may provide for rights which will survive termination of the agreement. *John Wiley & Sons v. Livingston,* 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964). If the intent of the parties was to provide

vested health insurance benefits for retirees in the 1968 group insurance agreement, there is no dispute that these benefits have not been surrendered by retirees and were therefore improperly terminated by Curtiss–Wright. *Allied Chemical Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398–99 n. 20, 30 L.Ed.2d 341 (1971). Thus, the overriding issue to be determined by the court is the parties' intent at the time the 1968 agreements were drafted.

The court must first look to the explicit language of the contract for a clear manifestation of intent. *Intern. Union, United Auto., Aerospace and Agricultural Implement Workers of Am. (UAW) v. Yard–Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984); *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 62 (4th Cir. 1989). Where there is an ambiguity, however, the court may examine the purpose of the contract and the circumstances surrounding the negotiations leading to its execution in deciding what the parties intended. *In re Chateaugay Corp.*, 891 F.2d 1034, 1038 (2d Cir.1989).

Each party asserts that the contract language unambiguously supports its position and the court need not look further to grant summary judgment. Defendant points out that neither the contract nor the attached insurance agreement contains any language explicitly vesting retiree health benefits. Absent such specific language, defendant argues, the benefits are limited in each of the successive contracts between itself and the Steelworkers to the date specified in the general durational clauses. In support of this argument, defendant relies on a recent Seventh Circuit decision, *Senn v. United Dominion Industries, Inc.*, 951 F.2d 806 (7th Cir.1992), which stated:

> "[E]ntitlements established by collective bargaining agreements do not survive their expiration or modification." Thus, it requires more than a statement in a CBA that welfare benefits "will continue" to create an ambiguity about vesting, for the logical interpretation under

our rule is that benefits "will continue" for the duration of the contract.... The mere silence of Collective Bargaining Agreements and plan documents concerning the vestment of welfare benefits fails to give rise to an ambiguity.

*Id.* at 816 (citations omitted).

Prior to 1987, the retirees enjoyed continuous coverage because a new contract always followed the expired one. Curtiss–Wright contends, however, that it had the right to make unilateral changes in the provision of retiree health benefits, a non-mandatory subject of collective bargaining under the National Labor Relations Act, when the 1984–87 contract expired on May 1, 1987 without completion of a new contract. Item 27, p. 18.

Plaintiffs claim that retiree benefits became vested for life during the 1968–71 insurance agreement, when Curtiss–Wright agreed to expand health insurance coverage. They cite Section 3 of Exhibit B of the Insurance Agreement, entitled *Post Retirement Group Health Insurance*, which began:

> Effective November 4, 1968, this insurance ... will be provided for employees receiving or becoming entitled to receive pension payments under The Curtiss–Wright Pension Plan by reason of the normal, automatic, early or disability retirement provisions of such Plan....

Item 28, Exh. 1 at B–11. The rest of Section 3 spelled out the conditions under which health coverage would not be provided. No mention is made of a termination of the contract. Plaintiffs argue that the above-quoted statement, coupled with the absence in this section of any language that such coverage would terminate upon the expiration of the collective bargaining agreement, indicates that retirees' health insurance would continue for life.

Plaintiffs dispute the effect of the contracts' general durational clauses on retirees' health benefits and disagree with the analysis of *Senn*. They urge the court instead to follow *Yard–Man*, which upheld the district court's conclusion that the parties intended to create lifetime health benefits for Yard–Man retirees. *Yard–Man*,

716 F.2d at 1480. In *Yard–Man*, the Sixth Circuit noted that since retiree benefits, which are a kind of delayed compensation, are not mandatory subjects of collective bargaining, it was not likely that they would be left to the contingencies of future negotiations. *Id.* at 1482. The court also concluded that retiree benefits are a type of "status" benefit, carrying with them an *inference* that they will continue as long as the status of the recipient does not change. This inference alone cannot prove plaintiffs' case. It does, however, buttress other extrinsic evidence such that a district court's finding that the parties intended to vest, even in the absence of express language in the contracts to that effect, should not be considered exceptional. *Id.*

*Yard–Man* sought to interpret each contract provision as part of the integrated whole, "so that all of the provisions, if possible, are given effect" and the "terms ... construed so as to render none nugatory and avoid illusory promises." *Id.* at 1479–80 (citations omitted). In determining intent, the specific "intent takes precedence over a non-specific, general clause," such as a routine durational clause. *Id.* at 1483; Item 34, pp. 8–9. Plaintiffs assert that by applying *Yard–Man*, the court must find that the language of the specific retiree health benefits clause unambiguously shows intent to vest those benefits beyond the life of the 1968–71 contract.

■ The contradiction between Section 3 of the Insurance Agreement, which does not include termination of the contract as one of the enumerated exclusionary provisions, and the general durational clauses, which specify that the agreements expire on a certain date, render the contract and accompanying insurance agreement ambiguous on the question of vesting of retiree health insurance benefits. While the Second Circuit has not specified what a collective bargaining agreement must contain in order to find an intention to vest retiree benefits, the general approach to contract interpretation under federal labor law has consistently been one of flexibility in considering evidence outside the parameters of the written agreement. *See, e.g. Marine Transport Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 878 F.2d 41 (2d Cir. 1989); *In re Chateaugay Corp., supra.* The rule laid out in *Senn* that extrinsic evidence need not be considered when a collective bargaining agreement is silent on the vesting of benefits unduly restricts courts in determining intent. Most other circuits have adopted the *Yard–Man* approach and looked to extrinsic evidence when the intent to vest is not clearly determinable by the contract language. *See, e.g., United Paperworkers Intern. Union v. Champion Intern. Corp.*, 908 F.2d 1252 (5th Cir.1990); *Keffer, supra* at 62–64; *United Steelworkers of Am. v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir.1988); although some have rejected an inference that vesting occurred absent language to the contrary. *See, e.g. Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1517 (8th Cir.1988).

■ Once the court determines that the contract and insurance agreement are ambiguous as to intent, the next step is to examine the extrinsic evidence. Again, both parties contend that the extrinsic evidence, when viewed alongside the contract language, unambiguously shows an intent (or no intent) to vest retiree health benefits.

Plaintiffs cite a written proposal and oral representations made by Curtiss–Wright during negotiations indicating that the defendant's offer of retiree benefits was not limited by the contract's duration (Item 40, Exh. D, Items 36, 38, and 39). They have submitted affidavits stating the Union routinely informed retiring employees that they were entitled to health insurance coverage for life in the presence of the Industrial Relations Manager without ever being contradicted. Item 39, ¶ 10. They point to Curtiss–Wright's behavior in 1974, when the Steelworkers struck at the end of the contract without any attempt on defendant's part to cut off retiree benefits. Finally, they argue that defendant's refusal to arbitrate this dispute because retirees are not covered by the collective bargaining agreement is inconsistent with maintaining

that they are affected by the expiration of that agreement. Item 43 at 3–4.

Defendant provides various Supplemental Plan Descriptions and the annual summary reports—whose relevant sections are quoted above—iterating that retiree coverage was provided under the terms of a collective bargaining agreement and was therefore subject to modification or termination. Item 29, Exs. 20–35. Defendant also argues that the affidavits offered by plaintiffs explaining their understanding of the intent of the parties to the agreement do not meet the Fed.R.Civ.P. Rule 56(c) standard of evidence. Item 42, pp. 1–6.

■ The extensive extrinsic evidence presented by both parties clarifies that their intent at the time the agreement was reached is a genuine issue of fact which cannot be decided by summary judgment. Plaintiffs have produced evidence of past actions and representations on Curtiss–Wright's part which may show that retiree benefits had vested. They also dispute the interpretation of supplementary documents to the contract. Defendant cites several documents which reserved the right to terminate the benefits and disputes the import of its past actions on the issue of vesting. These are factual disagreements concerning the intent of parties to a collective bargaining agreement which must be determined by a trier of fact.

■ Defendant also moves to dismiss Plaintiffs' second cause of action for breach of fiduciary duty. There is no dispute that in the absence of vesting, defendant did not breach its fiduciary duty by terminating retiree health coverage after the expiration of the 1984–87 CBA. *E.g.,* *Senn,* 951 F.2d at 816–18. "Unless the collective bargaining agreement establishes a duty to maintain the program, ERISA does not come into play." *Viggiano v. Shenango China Div. of Anchor Hocking,* 750 F.2d 276, 280 (3rd Cir.1984).

Defendant maintains that "fiduciary standards do not come into play," even assuming arguendo that the benefits had vested, because Curtiss–Wright was acting as a plan sponsor, not a plan administrator, when it chose to terminate the plan. Item 27, p. 29. In *Amato v. Western Union Intern., Inc.,* 773 F.2d 1402, 1416 (2d Cir. 1985), the Second Circuit recognized "that ERISA permits employers to wear 'two hats' and that they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators." Defendant asserts but does not explain why a decision to terminate a plan it has a duty to administer falls outside its fiduciary role. Plaintiffs' counterassertion that Curtiss–Wright, as plan administrator, breached its fiduciary duty to its retirees when it terminated their health insurance in contravention of the parties' agreement to provide them for life is also not amplified.

For this second cause of action, it seems reasonable to defer decision until it is determined whether or not the retiree health benefits vested. If not, no fiduciary duty will be found and the second cause of action must be dismissed as well. If, on the other hand, it is found that the benefits were vested and Curtiss–Wright violated its contractual obligations to the retirees, the parties will then have an opportunity to discuss whether defendant's fiduciary duty was breached as well.

## CONCLUSION

The court finds that the language contained in the 1968–71 collective bargaining agreement and attached insurance agreement referring to the duration of coverage for retirees is ambiguous, and the intent of the parties cannot be clearly determined from a plain reading. The extrinsic evidence presented by both parties demonstrates that there is a genuine issue of fact concerning the intent to vest retiree benefits. Therefore, summary judgment must be denied to both parties.

The court will meet with counsel on January 6, 1993, at 9 a.m. to determine the next step in this litigation.

So ordered.