**Nancy DENNY and Robert Denny, Plaintiffs–Appellees,**

v.

**FORD MOTOR COMPANY, Defendant–Appellant.**

**No. 1671, Docket 93–7815.**

United States Court of Appeals, Second Circuit.

Argued April 27, 1994.

Decided Dec. 6, 1994.

---

Paul F. McAloon, New York City (John Scarzafava, Oneonta, NY, Russell L. Cook, Jr., Cook & Butler, L.L.P., Houston, TX, of counsel), for plaintiffs-appellees.

John H. Beisner, Washington, DC (Brian D. Boyle, O'Melveny & Myers, Washington, DC, Brian P. Crosby, Gibson, McAskill & Crosby, Buffalo, NY, of counsel), for defendant-appellant.

Before: VAN GRAAFEILAND and WINTER, Circuit Judges, and MISHLER, District Judge.*

WINTER, Circuit Judge:

This products liability action arose out of an accident in which Nancy Denny was severely injured when the Ford Bronco II that she was driving rolled over. Ford Motor Company appeals from Chief Judge Mc-Avoy's denial of its post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. These motions followed the entry of a judgment based on the jury's responses to special verdict questions awarding $1.2 million to the Dennys. The jury concluded that the Ford Bronco II was not "defective" and therefore that Ford was not liable on Denny's strict products liability claim. However, the jury found that Ford had nonetheless breached an implied warranty.

Ford objected to the submission of both the strict products liability claim and implied breach of warranty claim to the jury on the grounds that they were identical and that an inconsistent verdict might result. Because the jury came to different conclusions on each claim, Ford seeks either judgment in its favor or a new trial. The district court held that Ford had waived the objection by not requesting that the perceived inconsistencies be resubmitted to the jury for reconsideration. It held also that the jury's conclusions were reconcilable because the two claims were not identical. We conclude that Ford did not waive its objection and certify the

* The Honorable Jacob Mishler, United States District Judge for the Eastern District of New York, sitting by designation.

issues raised for a decision by the New York Court of Appeals.

## BACKGROUND

On June 9, 1986, as Nancy Denny drove to work in her leased Ford Bronco II, a deer entered the road in front of her vehicle. She slammed on the brakes, and the vehicle rolled, resulting in severe damage to her hand. The Dennys sued Ford, asserting claims for negligence, strict products liability, and breach of implied warranty. The case went to trial in October 1992. At the close of the evidence, plaintiffs sought jury instructions on three claims: negligence, strict products liability, and breach of an implied warranty of merchantability. Ford specifically objected to the submission of both the strict products liability and the implied warranty claims, arguing that they were indistinguishable under New York law and that submission of both could lead to an inconsistent verdict. The district judge, however, decided that the "warranty cause of action is dissimilar in some respects [from the products liability cause of action].... I think—even at the risk of coming in with an inconsistent verdict, which I really don't want to happen, I'm going to charge them on both."

With respect to the strict products liability and implied warranty claims, the district court instructed the jury as follows:

Now, the plaintiffs' second theory is called strict products liability. A manufacturer who places a product on the market in a defective condition is liable for injury which results from use of the product when the product is used for its intended or reasonably foreseeable purpose. To prevail on this claim the plaintiffs must prove by a preponderance of the evidence that Ford Motor Company placed the Bronco II on the market in a defective condition.

A product is defective if it is not reasonably safe. I instruct you that if the Bronco II, at the time it left the seller's hands, was so likely to be harmful to people that a reasonable manufacturer or person who had actual knowledge of its potential for producing injury would conclude that it

should not have been placed into the stream of commerce in that fashion.

It is not necessary for the plaintiffs to prove that the defendant knew or should have known of the products potential for causing injury to establish that the product was not reasonably safe. Rather, the plaintiffs must prove by a preponderance of the evidence that a reasonable person; that is, a person who knew of the product's potential for causing injury and the existence of available alternative designs, would have concluded that such a product should not have been marketed in that condition. Such a conclusion should be reached after balancing the risks involved in using the product against the products usefulness and its costs and against the risks, usefulness and costs of the alternative design as compared to the product defendant did market. The burden of proving that the product was defective and that the defect was a proximate cause of plaintiff's injury is on the plaintiff.

Therefore, the first question that you must answer is whether the defendant's vehicle was defective. The plaintiffs claim that this vehicle was defective because of its propensity to rollover and lack of adequate warnings to the consumer of this propensity. The defendant denies this and contends the vehicle was designed in a reasonably safe manner and was, therefore, not defective.

\* \* \* \* \* \*

So, to summarize the second claim, in order for the plaintiffs to prevail they must prove by a preponderance of the evidence that the Bronco II was defective and that the defect proximately caused the damages sustained.

Now, the third claim is the breach of warranty claim. The law implies a warranty by a manufacturer which places its product on the market that the product is reasonably fit for the ordinary purpose for which it was intended. If it is, in fact, defective and not reasonably fit to be used for its intended purpose, the warranty is breached.

The plaintiffs' claim that the Bronco II was not fit for its ordinary purpose be-

cause of its alleged propensity to rollover and lack of warnings to the consumer of this propensity. If you find that the vehicle was not defective and was fit for its ordinary purpose, you will find that there was no breach of warranty and your verdict will be for the defendant. However, if you find from a preponderance of the evidence that the Bronco II was defective and was not fit for its ordinary purpose, you will find that the defendant breached its implied warranty. And like the negligence and strict products liability claims, in order to prevail on this claim the plaintiff must also prove by a preponderance of the evidence that any breach of warranty was a proximate cause of the plaintiffs' damages.

The jury was given no definition of the word "defective" other than the one provided in the strict products liability charge. Apart from Ford's objection to the submission of both the strict liability and implied warranty claims to the jury, neither party objected to the content of the instructions, and neither claims on appeal that there was error in either charge.

A three-page verdict form was provided to the jury. Neither party objected to the content of the verdict form's questions, although Ford's objection to the submission of both the strict liability and implied warranty claims obviously carried over to that verdict form.

The verdict form's questions and the jury's answers are set out in the margin.[1] The jury

1.
### VERDICT FORM

**I. Negligence:**

a. Do you find from a preponderance of the evidence that the Defendant was negligent in designing, testing and marketing the Bronco II?
YES _X_ NO ___
**If you answered YES to question I.a., proceed to question I.b.. However, if you answered NO to question I.a. proceed directly to question I.c.**

b. Do you find from a preponderance of the evidence that the Defendant's negligence in manufacturing the Bronco II was a proximate cause of the plaintiffs' injuries?
YES ___ NO _X_

c. Do you find from a preponderance of the evidence that the Defendant was negligent with regard to providing warnings with respect to the Bronco II?
YES ___ NO _X_
**If you answered YES to question I.c., proceed to question I.d.. However, if you answered NO to question I.c., proceed directly to question II.**

d. Do you find from a preponderance of the evidence that the Defendant's negligence with regard to providing warnings of the dangers of the Bronco II was a proximate cause of the plaintiffs' damages?
YES ___ NO ___

**II. Strict Products Liability:**

a. Do you find from a preponderance of the evidence that the Bronco II was defective as that term has been described to you by the court?
YES ___ NO _X_
**If you answered YES to question II.a., proceed to question II.b.. However, if you answered NO to question II.a. proceed directly to question III.**

b. Do you find from a preponderance of the evidence that the defects which you found in the Bronco II proximately caused the plaintiffs injuries?
YES ___ NO ___

**III. Breach of Warranty:**

a. Do you find from a preponderance of the evidence that Ford Motor Company breached an implied warranty as that term has been described to you by the court?
YES _X_ NO ___
**If you answered YES to question III.a, proceed to question III.b.. However, if you answered NO to question III.a. do not answer question III.b..**

b. Do you find from a preponderance of the evidence that the breach of warranty found in question III.a. proximately caused the plaintiffs injuries?
YES _X_ NO ___

\*   \*   \*   \*   \*   \*

*IF, AND ONLY IF,* you answered YES to any of the following questions: I.b., I.d., II.b., *OR* III. b., then proceed with the remaining questions.

\*   \*   \*   \*   \*   \*

**IV. Comparative Fault:**

a. Do you find that the plaintiff was negligent?
YES _X_ NO ___
**If you answered YES to question IV.a. then proceed to question IV.b. However, if you answered NO to question IV.a., then proceed directly to question V.**

b. Was the negligence of the plaintiff a proximate cause of her injuries?
YES _X_ NO ___
**If you answered YES to question IV.b. then proceed to question IV.c. However, if you answered NO to question IV.b., then proceed directly to question V.**

c. What percentage of fault to [sic] you attribute to each of the following for the plaintiffs' injuries?

| | |
|---|---|
| NANCY DENNY | 60% |
| FORD MOTOR COMPANY | 40% |
| Total | 100% |

first found that Ford was negligent in "designing, testing and marketing the Bronco II," but that this negligence was not the proximate cause of Nancy Denny's injuries. The jury next found that Ford was not negligent in failing to provide appropriate warnings with respect to the Bronco II. To Question II(a), the jury answered that the Bronco II was not "defective." Because defectiveness was an essential element of the strict liability claim, the negative answer disposed of that claim. The jury then proceeded to find in its answer to Question III(a) that Ford had breached its implied warranty, and that this breach was the proximate cause of Nancy Denny's injuries. The jury, however, also found that Nancy Denny's negligence was 60% responsible for her injuries. The jury then fixed the Dennys' damages at $3,000,000 but refused to award punitive damages. When the verdict was returned, Ford did not request clarification or resubmission of any aspect of the verdict.

Based on the jury's answers, the district court entered judgment for the Dennys on their breach of implied warranty claim in the amount of $1,200,000 (40% of $3,000,000). Following entry of judgment, Ford moved pursuant to Fed.R.Civ.P. 50(b) for judgment as a matter of law, or in the alternative, for a new trial under Fed.R.Civ.P. 59(a), based on, among other grounds, the claimed inconsistency of the jury's responses to the special verdict questions. The Dennys moved for judgment as a matter of law on the grounds that the evidence did not support the finding that Nancy Denny was 60% comparatively negligent.

The district court denied both parties' motions. With regard to Ford's motions for judgment or for a new trial, it ruled that the verdict form used was a general verdict accompanied by answers to interrogatories under Fed.R.Civ.P. 49(b), that Ford had waived its objection to the inconsistency of the answers by not objecting and asking for resubmission when the jury announced its verdict, and that, in any event, the jury's answers were reconcilable. Ford appealed.[2]

## DISCUSSION

Ford argues that, with regard to waiver, our cases distinguish sharply between those involving a special verdict under Rule 49(a) and those involving a general verdict accompanied by written answers to interrogatories under Rule 49(b). Ford states that we have squarely held that parties complaining of inconsistent verdicts under 49(a) do not waive their objection by failing to seek resubmission before the jury is discharged. *See Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 890–91 (2d Cir.1988). Ford concedes, however, that failure to seek resubmission waives an objection, or at least weighs in favor of waiver, when the jury has returned a Rule 49(b) general verdict accompanied by answers to interrogatories. *See, e.g., Lavoie v. Pacific Press & Shear Co.,* 975 F.2d 48, 54–57 (2d Cir.1992) (failure to resubmit deemed a waiver); *Schaafsma v. Morin Vermont Corp.,* 802 F.2d 629, 634–35 (2d Cir.1986) (failure to resubmit weighs negatively on party that seeks to have judgment set aside); *Haskell v. Kaman Corp.,* 743 F.2d 113, 123 (2d Cir.1984) (same as *Lavoie* ). We are not persuaded that our caselaw has either drawn such a sharp distinction or should.

First, although it is true that *Auwood* states that there is no waiver of an objection to an inconsistency in a Rule 49(a) special verdict, the *Auwood* case did not reverse and order a new trial. Rather, it held that the juries' answers were not inconsistent. There is thus some doubt whether the discussion of

V. **Punitive Damages:**
   a. Do you find from a preponderance of the evidence that punitive damages, as described to you by the court, should be awarded against Ford Motor Company?
         YES ___ NO _X_
VI. **Compensatory Damages:**
   What amount of damages do you find from a preponderance of the evidence will fairly compensate the plaintiffs for their damages, if any?
              $3,000,000

**Note: Please note that the court will reduce the total amount of plaintiffs' damages by any percentage of fault you assess to the plaintiff, if any. Consequently, your determination as to damages should be arrived at WITHOUT REGARD to the apportionment of fault.**

Dated: ——————— ———————
                            Foreperson

**2.** The Dennys have not cross-appealed the district court's denial of their post-trial motion.

waiver and Rule 49(a) was a holding or dicta. Second, there is no clear definition in our caselaw of what constitutes a Rule 49(a) verdict and what constitutes a Rule 49(b) verdict. For example, in *Brooks v. Brattleboro Memorial Hospital,* 958 F.2d 525, 527–29 (2d Cir.1992), the district court had given a verdict form to the jury which had five questions asking for a legal conclusion as to various liability claims and a sixth question as to the amount of damages. Although the form contained no strictly factual questions, we described it as a Rule 49(a) verdict. However, there was no waiver issue, and the Rule 49(a) label did not affect the outcome.

■ Third, the basis for a sharp distinction regarding waiver between Rule 49(a) verdicts and Rule 49(b) verdicts is unclear. The paradigm of a Rule 49(a) verdict is a series of questions of adjudicative fact to be answered by the jury. Based on these answers, the court draws the proper legal conclusions and enters an appropriate judgment. Were a jury in a traffic collision case to answer the question "What was the color of the northbound light at the time of the accident?" with the response "Red" and a similar question concerning the eastbound light also with the response "Red," neither party could anticipate what judgment the court would enter and neither party would bear the burden of asking for resubmission to the jury for reconciliation. In such a case, the objection to the inconsistency might not be waived. However, if, in such a case, the court were to announce before the jury was discharged that it intended to enter judgment for the plaintiff, it is hard to see why the defendant should be allowed to sit by silently and yet be granted a new trial on appeal. A case-by-case application of the familiar principles of waiver, which is our approach under Rule 49(b), thus seems desirable under Rule 49(a).

The verdict form here was similar to that in *Brooks.* However, whether this is a Rule 49(a) or 49(b) case need not be addressed because we conclude that there was no waiver. The district court viewed the instant matter as analogous to the inconsistent "Red" light answers in the hypothetical above and found a waiver in Ford's failure to request a resubmission before the jury was discharged. We disagree.

■ This was not a case in which an inconsistency could be resolved by resubmitting the verdict form to the jury with a request that it reconcile its answers to particular questions. In such a case, neither the court's instructions as to the law nor the verdict form would be altered. In the instant matter, however, Ford had objected to submitting both the strict liability and implied warranty claims to the jury. That objection had been overruled, and if that ruling is assumed to be correct, the jury's verdict was not inconsistent. Were Ford to ask for resubmission after the verdict was rendered on inconsistency grounds, the court could have sought to have the jury cure that inconsistency only by giving new instructions and a new verdict form to the jury. In short, it could seek to have the jury cure the inconsistency only by reversing or modifying the earlier ruling it had made with regard to Ford's objection. A request by Ford for resubmission, therefore, would have been no more than a renewal of Ford's earlier objection to the instructions. A party who has timely objected to jury instructions is not obliged to renew its objection after the jury has rendered a verdict consistent with those instructions. Fed.R.Civ.P. 51 (requiring a party to object to jury instructions only "before the jury retires to consider its verdict").

*Lavoie* is not to the contrary. In that case, a negligence and strict liability claim were submitted to the jury with no objection from the defendant. After the jury found negligence but no strict liability, the defendant appealed on the ground that the verdict was inconsistent. Although we found a waiver in those circumstances, we specifically noted that a proper objection should have been made before the jury was instructed on both claims. 975 F.2d at 54–55. Such an objection was made in the present case.

We turn now to the principal question and two subsidiary questions raised by the merits that we believe should be certified to the New York Court of Appeals. The principal question is whether, under New York law, the strict products liability and implied warranty claims are identical. The first subsid-

iary question is whether, if the claims are different, the strict products liability claim is broader than the implied warranty claim and encompasses the latter. The second subsidiary question is whether, if the claims are different and a strict liability claim may fail while an implied warranty claim succeeds, the jury's answer "No" to Question II(a) is inconsistent with the answer "Yes" to Question III(a). Without answers to these questions, we cannot determine whether the verdict answers were inconsistent or advise the district court as to how to instruct the jury on a new trial.

With regard to whether the claims are identical, Ford devotes much energy to quoting New York cases that discuss the evolution of New York tort law. It notes that the rush to eliminate the privity requirement led to the nearly simultaneous judicial creation of strict products liability, *see Codling v. Paglia,* 32 N.Y.2d 330, 340–42, 345 N.Y.S.2d 461, 467–69, 298 N.E.2d 622, 626–28 (1973), and legislative creation of breach of implied warranty, *see Heller v. United States Suzuki Motor Corp.,* 64 N.Y.2d 407, 410–11, 488 N.Y.S.2d 132, 133–34, 477 N.E.2d 434, 430–31 (1985). Some lower New York courts have regarded the claims as identical. *See Ryion v. Len–Co Lumber Corp.,* 152 A.D.2d 978, 979, 543 N.Y.S.2d 595, 595 (4th Dep't) (claims for strict products liability and breach of implied warranty "indistinguishable"), *leave to appeal denied,* 74 N.Y.2d 616, 549 N.Y.S.2d 961, 549 N.E.2d 152 (1989); *Dickey v. Lockport Prestress, Inc.,* 52 A.D.2d 1075, 1076, 384 N.Y.S.2d 609, 610 (4th Dep't 1976) ("strict products liability and liability to a remote user based on implied warranty are one and the same cause of action").

The Dennys, for their part, devote much of their effort to discussing New York caselaw that seemingly approves the simultaneous submission of both strict liability and breach of implied warranty claims to the jury. *See Harvey v. Suds N' Fluff Laundromat, Inc.,* 194 A.D.2d 644, 645, 599 N.Y.S.2d 86, 88 (2d Dep't 1993); *Ryion,* 152 A.D.2d at 979, 543 N.Y.S.2d at 595. The Dennys also point out that New York continues to provide separate and different pattern jury instructions for each of the claims. *Compare New York Pattern Jury Instructions—Civil* § 2:141 (Supp. 1993) (strict products liability) *with id.* at 2:141.3 (Supp.1993) (implied warranty). There is no controlling precedent of the Court of Appeals, and the issue appears to arise with frequency. We therefore believe that the issue should be certified to the New York Court of Appeals. *See* 22 N.Y.C.R.R. § 500.17 (1986); *Kidney v. Kolmar Labs., Inc.,* 808 F.2d 955, 957 (2d Cir.1987).

The first subsidiary issue, whether the strict liability claim is broader than, and encompasses, the implied warranty claim, arises if the Court of Appeals finds that the claims are different. The district court reasoned that the claims were different because strict liability concerned the reasonableness of placing the Bronco II in the stream of commerce knowing of its potential for injury while implied warranty concerned whether the Bronco II was reasonably fit for its ordinary purpose. Even if the claims are different, however, the verdict may be inconsistent because the strict liability claim may include all breach of warranty claims as well as other situations that do not amount to a breach of warranty. A "Yes" on the latter may thus not be consistent with a "No" on the former.

The instructions on strict liability told the jury that "[a] manufacturer who places a product on the market in a defective condition is liable for injury which results from use of the product when the product is used for its intended or reasonably foreseeable purpose. To prevail on this claim the plaintiffs must prove … that Ford Motor Company placed the Bronco II on the market in a defective condition." The strict liability instruction thus focused on the very placing of the Bronco II "on the market" and injury resulting from "its intended or reasonably foreseeable purpose." Arguably, this formulation is broader than, and encompasses, the implied warranty claim. A manufacturer surely should not market a product that is not reasonably fit for its ordinary purpose. To that extent, the strict liability claim encompasses the implied warranty claim. Moreover, "foreseeable" uses certainly include all uses that are "ordinary" but also perhaps some that are not "ordinary." The strict liability claim may thus be broader

than the implied warranty claim. If necessary, we believe the Court of Appeals should resolve this issue also.

The final issue, whether the jury's answer "No" to Question II(a) is inconsistent with the answer "Yes" to Question III(a), arises if the Court of Appeals determines that an implied warranty claim can succeed while a strict liability claim fails. In Question II(a), the jury found that the Bronco II was not "defective," as defined for strict liability purposes. In instructing the jury on the implied warranty claim, the jury was instructed three times that defectiveness had to be shown to recover for breach of the implied warranty. However, no separate definition of "defective" was given for purposes of the implied warranty claim, and Ford argues therefore that a "No" answer to II(a) cannot be reconciled with a "Yes" answer to III(a). We believe this question should also be resolved by the Court of Appeals if necessary.

We therefore certify the designated questions to the New York Court of Appeals.

VAN GRAAFEILAND, Circuit Judge, dissenting:

In 1982, a State Federal Judicial Council, consisting of state and federal judges, was appointed and charged with the task of improving relations between the state and federal courts and eliminating unnecessary problems and conflicts that occasionally arose. Among the first items suggested by the federal judges for action was the adoption of some procedure by which the New York Court of Appeals could be asked to answer questions of New York law certified to it by federal appellate courts. The federal judges were informed that this would require an amendment of the New York Constitution, but were promised that such amendment would be sought. The amendment, which required approval by the New York voters, was sought and obtained. *See* N.Y. Const. art. 6, § 3(b)(9). The Council was informed, however, that the busy New York Court of Appeals might not adopt the certification process if the right of appeal from lower state courts was not substantially limited by adoption of a permission-to-appeal process somewhat similar to the certiorari practice of

the United States Supreme Court. This limitation was imposed. *See* C.P.L.R. § 5601 as amended in 1985 and n. C5601:3, following section 5601 in McKinney's 1994 Cumulative Annual Pocket Part. The New York Court of Appeals then adopted section 500.17 of its Rules of Practice which, like article 6, section (3)(b)(9) of the New York Constitution, provides for certification of questions where "determinative questions of New York law are invoked in a cause pending before [the certifying court]." 22 NYCRR § 500.17. If the certified question "does not satisfy the requirement that it 'may be determinative' of the pending action," the question will not be answered. *See Retail Software Servs., Inc. v. Lashlee,* 71 N.Y.2d 788, 790, 530 N.Y.S.2d 91, 525 N.E.2d 737 (1988) (per curiam). Because I believe that the questions my colleagues propose to ask do not satisfy this requirement, I object to their being certified to the busy New York Court of Appeals.

The basic issue in the instant case is whether there was such an irreconcilable inconsistency between the jury's responses to interrogatories II and III as to mandate the invalidation of the jury's verdict. Because "[t]he theory under which jury instructions are given by trial courts and reviewed on appeal is that juries act in accordance with the instructions given them," *City of Los Angeles v. Heller,* 475 U.S. 796, 798, 106 S.Ct. 1571, 1572, 89 L.Ed.2d 806 (1986), resolution of the issue of reconciliation properly is arrived at by construing the jury's responses in the light of the district court's instructions. *See, e.g., Gallick v. Baltimore & Ohio R. Co.,* 372 U.S. 108, 121–22, 83 S.Ct. 659, 667–68, 9 L.Ed.2d 618 (1963); *Henry v. A/S Ocean,* 512 F.2d 401, 405 (2d Cir.1975); *Hock v. Sno–Haus Ski Shop,* 100 A.D.2d 953, 954, 475 N.Y.S.2d 93 (1984) (mem.); *Alverez v. J. Ray McDermott & Co.,* 674 F.2d 1037, 1040 (5th Cir.1982); *Mercer v. Long Mfg. N.C., Inc.,* 665 F.2d 61, 66 (5th Cir.1982); *Halprin v. Mora,* 231 F.2d 197, 201 (3d Cir. 1956).

With respect to interrogatory II, the Strict Liability Count, the district court instructed the jury that "[a] product is defective if it is not reasonably safe," i.e., "if the Bronco II, at the time it left the seller's hands, was so

likely to be harmful to people that a reasonable manufacturer or person who had actual knowledge of its potential for producing injury would conclude that it should not have been placed into the stream of commerce in that fashion." With respect to interrogatory III, the Breach of Warranty Count, the district court charged that if the Bronco II "was defective and was not fit for its ordinary purpose, [the jury] will find that the defendant breached its implied warranty."

I do not believe we need the help of a heavily-burdened New York Court of Appeals in determining whether these tests are so alike as to require identical answers. The district judge found that the instructions "involved different standards" and the "findings [were] not inconsistent." If he was correct in making these findings, the verdict must stand. If he was wrong, there should be a new trial.

I am satisfied that the application of different standards was not dependent upon the presence or absence of the word "defective," a term whose meaning differs depending on the manner in which the term is used. In common lay parlance, the word "defective," when addressed to an object, connotes the existence of a flaw, fault, broken part, or mechanical defect in that object. *See Webster's Third New International Dictionary* 591; *Dillon v. Louisiana Power & Light,* 557 So.2d 293, 295 (La.Ct.App.1990). However, in the law of products liability, a defect in a product may consist of one of three elements, manufacturing mistake, improper design, or inadequate warning. *See Robinson v. Reed–Prentice Div. of Packaged Mach. Co.,* 49 N.Y.2d 471, 478–79, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980). For example, a "defect" based on a manufacturing mistake obviously is not the same as a "defect" based on improper design. Professor John Wade of Vanderbilt, in his article entitled "On Product 'Design Defects' and Their Actionability," published in 33 Vand.L.Rev. 551, 551–52 (1980), described the problems inherent in the word "defective" as follows:

> As a term of art, "defective" gives little trouble when something goes wrong in the manufacturing process and the product is not in its intended condition. It is then

defective in the normal sense of the expression. The condition of a product, however, may also be actionable if the product's design is not sufficiently safe or if it does not have adequate instructions or warnings. In a case of this type, the manufacturer intended the product to be in its present condition, and to assert that it is defective or that it has a defective design is to use the term in a special sense that prevents its being very helpful in determining whether the product should be found to be actionable. "Defective" thus becomes an epithet—an expression for the legal conclusion rather than a test for reaching that conclusion.

In sum, then, it is the definition or meaning of the word "defective" as used in a particular setting that is important. Interrogatory III did not even contain the word "defective." However, it did contain a definition of the word in the connotation at issue. Because no one quarrels with this definition, I do not believe that we should request the New York Court of Appeals to undertake what is at best an academic discussion of the similarities and priorities as between strict liability and breach of warranty.

It is well established that a district court has "considerable discretion" in reconciling apparent inconsistencies in a jury's verdict. *See, e.g., McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1311–12 (2d Cir.1993); *Harris Market Research v. Marshall Mktg. and Communications, Inc.,* 948 F.2d 1518, 1522 (10th Cir.1991); *Kavanaugh v. Greenlee Tool Co.,* 944 F.2d 7, 10 (1st Cir.1991). Our responsibility, following that of the district court, is "to adopt a view of the case, if there is one, that resolves any seeming inconsistency." *Brooks v. Brattleboro Memorial Hosp.,* 958 F.2d 525, 529 (2d Cir.1992); *see also Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 891 (2d Cir.1988); *Fiacco v. City of Rensselaer,* 783 F.2d 319, 325 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). We should be able to do this without calling upon the New York Court of Appeals for help.

### ORDER

This appeal from the United States District Court for the Northern District of New

York (Thomas J. McAvoy, *Chief Judge*), came on to be heard on the transcript of record from said district court and was argued by counsel.

On consideration of the briefs and records and the oral argument in this appeal, it is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a complete set of briefs, appendices and record filed by the parties with this court. This panel retains jurisdiction so that, after we receive a response from the New York Court of Appeals, we may dispose of the appeal. The parties are hereby ordered to bear equally such fees and costs, if any, as may be requested by the New York Court of Appeals.

(s) Ralph K. Winter
Hon. Ralph K. Winter, U.S.C.J.

(s) Jacob Mishler
Hon. Jacob Mishler, U.S.D.J.

## ORDER

Certificate to the New York Court of Appeals (pursuant to New York Rules of Court § 500.17(b), 22 N.Y.C.R.R. § 500.17 (1986)—certification of unsettled question of state law).

1. The case concerns the interrelationship between tort claims involving strict products liability and breach of implied warranty. Plaintiff Nancy Denny was injured when a truck manufactured by defendant Ford Motor Company rolled over. Plaintiffs sued under theories of strict products liability and breach of implied warranty. Defendant objected to the district court's decision to charge the jury under both theories, maintaining that the claims are identical under New York law and that submission of both claims could lead to an inconsistent verdict. Nevertheless, the district court instructed the jury i) that defendant was liable under a theory of strict products liability if it "place[d] a product on the market in a defective condition" and injury resulted when the product was used for its "intended or reasonably foreseeable purpose;" and ii) that the defendant was liable under a theory of breach of implied warranty if the product "was defective and not reasonably fit to be used for its intended purpose." The jury found that the truck was not "defective" and thus that defendant was not liable under a theory of strict products liability. However, the jury found also that defendant had breached its implied warranty and that this breach was the proximate cause of Nancy Denny's injuries. The district court entered judgment for plaintiffs in the amount of $1.2 million. Defendant then moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), or in the alternative, for a new trial under Fed.R.Civ.P. 59(a), asserting that the jury's finding of liability for breach of warranty was inconsistent with its finding of no liability under the strict products liability theory. The district court held that the jury's answers were reconcilable.

2. The principal question presented is whether the strict products liability claim and the breach of implied warranty claim are identical. A subsidiary question is whether, if the claims are different, the strict products liability claim is broader than the implied warranty claim and encompasses the latter. Another subsidiary question is whether, if the claims are different and a strict liability claim may fail while an implied warranty claim succeeds, the jury's finding of no product defect is reconcilable with its finding of breach of warranty.

3. These questions should be decided by the New York Court of Appeals at this time because there appear to be contradictory precedents in the appellate division and because the issues seem likely to recur with some frequency.

FOR THE COURT

/s/ GEORGE LANGE, III
George Lange, III, *Clerk*