**J. Blaine LEWIS, Jr., Plaintiff,**

v.

**Bruce D. COWEN, Roland H. Lange and William V. Hickey, Individually, Defendants.**

**Civ. No. 2:91CV432 (TPS).**

United States District Court, D. Connecticut.

June 17, 1997.

William H. Champlin, III, William S. Rogers, Kevin Mc Cann, Tyler, Cooper & Alcorn, Hartford, CT, for plaintiff.

Robert F. Vacchelli, Richard M. Sheridan, Asst. Attys. Gen., Attorney General's Office, Public Safety & Special Revenue, Hartford, CT, for defendants.

### RULING ON DEFENDANTS' MOTION FOR A NEW TRIAL AND/OR REMITTITUR AND DEFENDANTS' MOTION FOR JUDGMENT AFTER TRIAL

SMITH, United States Magistrate Judge.

## I. DEFENDANTS' MOTION FOR A NEW TRIAL AND/OR REMITTITUR

Defendants' opposition to the size of the verdict in this case can be boiled down to but a few complaints. First, they maintain that the compensatory damages awarded were excessive because a.) the evidence of plaintiff's emotional distress was insufficient, and b.) the evidence of plaintiff's economic losses was insufficient. Second, defendants claim the punitive damages awarded here amount to a "windfall" for the plaintiff that "shocks the conscience."

### A. Applicable law

#### 1. New trials

The ordering of new trials and remittitur issues are governed by Rule 59 of the Fed.R.Civ.P. A new trial may be granted where the verdict is against the weight of the evidence. *See Piesco v. Koch,* 12 F.3d 332 (2d Cir.1993). New trials may also be granted under Rule 59 where the jury verdict is excessive. *See Tingley Systems, Inc. v. Norse Systems, Inc.,* 49 F.3d 93 (2d Cir. 1995). The moving party, however, bears "a heavy burden of convincing the court that the jury has reached a seriously erroneous result or that its verdict is a miscarriage of justice." *Manes v. Metro–North Commuter R.R.,* 801 F.Supp. 954, 956 (D.Conn.) *aff'd* 990 F.2d 622 (2d Cir.1993) (quoting *Purnell v. Lord,* 952 F.2d 679, 685 (2d Cir.1992)) (internal quotations omitted). And "[t]he authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. v. Dai-*

*flon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980).

### 2. Punitive damages

■ The purpose of punitive damages is to punish the defendants and/or deter similar conduct in the future. *See Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 19–20, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991). "Although there is no mathematical formula to compute punitive damages, such an award must bear a reasonable relationship to a plaintiff's injury and defendant's malicious intent." *Getty Petroleum Corp. v. Island Transp. Corp.,* 862 F.2d 10, 14 (2d Cir.1988) (citations omitted). "[B]ecause neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute 'a windfall to the individual litigant.' " *Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir.1992) (quoting *Aldrich v. Thomson McKinnon Sec., Inc.,* 756 F.2d 243, 249 (2d Cir.1985)). An award of punitive damages should be "reversed only if it is 'so high as to shock the judicial conscience and constitute a denial of justice.' " *Hughes v. Patrolmen's Benevolent Ass'n,* 850 F.2d 876, 883 (2d Cir.1988)(quoting *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978)).

### B. The compensatory damages award

Defendants characterize the $1,028,196 compensatory damages award in this case as "utterly unsupported by the evidence." This, in the court's view, is inaccurate and unfair.

### 1. Emotional distress, humiliation and injury to reputation

■ Despite defendants' position to the contrary, evidence of medical attention is not required to support a claim of emotional distress in § 1983 actions. *Miner v. City of Glens Falls,* 999 F.2d 655, 662–63 (2d Cir. 1993). Thus, based on plaintiff's testimony, and the corroborating testimony of his wife, the jury may have properly concluded plaintiff was entitled to compensatory damages

for his emotional distress. Jurors also may have factored in the injury to plaintiff's reputation and the humiliation he endured when he was fired for exercising his First Amendment rights.[1] *See Henry v. Gross,* 803 F.2d 757, 768 (2d Cir.1986) ("It is a basic principle of tort law in general, and of civil rights law in particular, that compensable injuries may include not only monetary losses such as out-of-pocket expenses but also injuries such as 'personal humiliation' and 'mental anguish'.") (quoting *Memphis Community School District v. Stachura,* 477 U.S. 299, 306–08, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986)); *see also Bernheim v. Litt,* 79 F.3d 318, 325–26 (2d Cir.1996) (impairment of one's reputation is legally cognizable harm in § 1983 First Amendment retaliation claim); *Stolberg v. Bd. of Trustees,* 474 F.2d 485, 488 (2d Cir. 1973) (injury to reputation compensable in First Amendment cases). A compensatory award based upon emotional distress, humiliation and injury to reputation, if proved, is not an award of "presumed" damages, as defendants allege. *See generally Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Therefore, to the extent the award here was based upon these factors, it is amply supported by the evidence and there is no reason whatever to set it aside or reduce it.

### 2. Back pay and other economic losses

■ Dr. Richard Martin, an economist, testified that plaintiff sustained $514,098 in economic losses. Defendants allege that Dr. Martin's calculations were based upon a faulty assumption, i.e., "that plaintiff would remain employed by the State through February of 1992."[2] Memorandum in Support of Defendants' Motion For New Trial [Document No. 149] at 8. And they appear to contend that jurors were not entitled to consider Dr. Martin's calculations because "[p]laintiff was an at-will employee who could be terminated at any time, for any reason," and therefore had no reasonable expectation

---

1. In addition to losing his job and the benefits that went with it, plaintiff was also stripped of his position as President of the North American Association of State and Provincial Lotteries.

2. Plaintiff testified that he was 69 years old when he was terminated in 1989, and that he had planned to retire in February of 1992 at age 72. Accordingly, Dr. Martin's calculations of lost wages and other benefits were based upon this date.

of remaining employed through February of 1992. *Id.*

The Second Circuit has heard and rejected this argument before. *See Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 276 (2d Cir.1996). In *Sagendorf–Teal,* the court noted that employees—even those who may be discharged with or without cause—"may not be discharged in violation of [their] First Amendment rights, and will be entitled to redress for such a violation." *Id.* More specifically, the court stated that

> [a]fter finding a violation of Sagendorf–Teal's First Amendment rights, the jury was entitled to make its own reasonable determination of the measure of damages, and could award damages for a period longer or shorter than the remaining period of probation. The fact that the plaintiff *could have* been terminated solely because her probationary period ended does not mean that such a discharge *would have* occurred in the absence of protected speech, and the jury was not required to find otherwise.

*Id.* (emphasis added). So, defendants find themselves in a losing posture. Plaintiff, as an at-will employee, *could* indeed have been terminated sometime before February of 1992, his anticipated retirement date. It does not follow, however, that he *would have* been terminated before that date; and as *Sagendorf–Teal* illustrates, the jury was not required to find otherwise.

One of the elements factored into Dr. Martin's economic loss calculation was plaintiff's retirement benefits/accumulated sick and vacation pay. Defendants argue that plaintiff was entitled to apply for and receive these benefits immediately upon his termination, so any loss he suffered by not seeking them until a later date should not have been taken into account by the jury.

The defense presented this theory at trial; counsel cross-examined Dr. Martin. He carefully questioned Dr. Martin's mathematical assumptions and his calculations. And the defense felt it unnecessary to call its own expert to refute Dr. Martin's testimony. *If* jurors factored in economic losses when they fixed plaintiff's compensatory damages, the amount they set and the credibility they lent to plaintiff's expert were determinations properly within their province. *See Dunlap–McCuller v. Riese Organization,* 980 F.2d 153, 158 (2d Cir.1992) (A jury's evaluation of a witnesses credibility should rarely be disturbed.); *see also Piesco,* 12 F.3d at 345. Their conclusions were entirely rational and wholly supported by the evidence, and there is simply no reason to now order a new trial or reduce the award.

### C. Punitive Damages

The jury awarded plaintiff $640,644 in punitive damages. these damages were not assessed arbitrarily. This amount is proportional to the amount of compensatory damages awarded and was not assessed in an across-the-board, lump-sum fashion. Rather, these damages were assessed only against Defendant Hickey. Thus, the amount of punitive damages awarded, and the targeted manner in which they were assessed, tucks them safely below the shock-the-conscience threshold. Under the applicable law set forth *supra* at 101–102, the court declines to disturb the award.

## II. DEFENDANTS' MOTION FOR JUDGMENT AFTER TRIAL

### A. Discussion

Defendants maintain they are entitled to judgment as a matter of law, and they bring this motion pursuant to Fed.R.Civ.P. 50. "Judgment as a matter of law is proper under Fed.R.Civ.P. 50 only if, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Caruso v. Forslund,* 47 F.3d 27, 32 (2d Cir.1995) (internal quotations omitted, citations omitted). The defendants simply cannot meet this standard. They raise twelve failing arguments in support of their motion, and these arguments are addressed in turn below.

1. Whether plaintiff's speech was a substantial factor or a motivating factor in the decision to terminate him.

Public employers may not retaliate against their employees for exercising

the right to free speech. *See generally Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mount Healthy School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). However, plaintiffs who claim to have been so retaliated against must prove 1.) that their speech was constitutionally protected, and 2.) that it was a substantial factor or a motivating factor in the employer's decision to retaliate against them. *Mount Healthy,* 429 U.S. at 284–86, 97 S.Ct. at 575. If a plaintiff proves these two elements, the burden shifts to the defendant to demonstrate that the plaintiff would have been fired even in the absence of the protected speech. *Id.*

Defendants' theory from the outset has been that Mr. Lewis was fired because he did not follow a direct order. Plaintiff's position, of course, is that he was fired because he would not keep quiet about proposed changes in Connecticut's lottery, or, even more accurately, he would not represent in a "positive" light proposed changes that he felt were going to destroy the lottery. These competing theories were presented to the jury. And, despite defendants' insistence to the contrary, there was ample evidence to support the jury's conclusion that plaintiff's exercise of his First Amendment rights was a substantial, if not a motivating, factor in defendants' decision to fire him.

Defendants claim that they "produced ample evidence ... [of] a legitimate, performance-based reason for [them] to have terminated [plaintiff's] employment and that, even in the absence of the plaintiff's speech, such firing was inevitable...." Defendants' Motion for Judgment After Trial [Document No. 147] at 6. The court disagrees. However, what matters is that the jury, obviously, did not find this to be so.

In short, plaintiff has carried his burden as set forth in *Connick* and *Mount Healthy.* That the jury did not believe plaintiff was terminated for "performance-based" reasons is no reason for the court to order judgment after trial.

### 2. Protected Speech

A two-part test is applied to determine whether speech by a government employee is protected by the First Amendment.

*Waters v. Churchill,* 511 U.S. 661, 667–69, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994). First, speech must pertain to "a matter of public concern." *Id.* And second, "the employee's interest in expressing [himself] on this matter must not be outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citations omitted, internal quotations omitted). Moreover, "inquiry into the protected status of speech is one of law, not fact." *Connick,* 461 U.S. at 148, n. 7, 103 S.Ct. at 1690, n. 7. Thus, "it is the court's task to apply the *Connick* test to the facts." *Waters,* 511 U.S. at 668, 114 S.Ct at 1884.

The court, as a matter of law, determined that plaintiff's speech in this case pertained to a matter of public concern. The jury charge reads as follows:

> I instruct you that, as a matter of law, Mr. Lewis communications regarding the wisdom of the change in Lotto format and the orders of Mr. Hickey are communications which involve matters of public concern. Therefore, you may now proceed to the next step of the analysis, and determine whether actions by the defendants deprived Mr. Lewis of his right to communicate these views, or punished him in retaliation for doing so.

Tr. [Document No. 161] at 55. The court also resolved part two of the Connick test as a matter of law. However, taking every possible precaution to avoid prejudicing the defendants, it went on to put this question to the jury. *See* Tr. [Document 161] at 78–79.

> In order to determine whether the defendants' termination of, or orders to, Mr. Lewis violated his free speech rights, you must balance the interests of Mr. Lewis, as a citizen, in commenting upon these matters of public interest against the defendants' interest in carrying out the functions of government, as employer, without disruptions. If you find that defendants' or the state's interest outweighs plaintiff's free speech rights, then you should find for the defendants. If not then you must continue your analysis.

Tr. [Document No. 161] at 55–56. Defendants now argue that the inclusion of this language in the charge entitles them to judgment as a matter of law. For the reasons that follow, it does not.

■ "The standard for review of jury charges is 'whether the entire charge, viewed in light of all the evidence, would tend to confuse or mislead the jury as to the principles of law that apply to the facts.'" *Webb v. GAF Corp.*, 936 F.Supp. 1109, 1118 (N.D.N.Y.1996) (quoting *National R.R. Passenger Corp. v. 25,900 Sq. Ft. Parcel of Land*, 766 F.2d 685, 688 (2d Cir.1985)). In fact, even when a charge contains error, it must be clear that the error "prejudiced the movant" before post-trial relief will be granted. *Id.* at 1122–23; *see also* Fed.R.Civ.P. 61. "To determine if one instruction is prejudicial, it must be considered in light of the *entire* charge." *Webb*, 936 F.Supp. at 1122 (emphasis in original) (citation omitted).

After careful review, the court is abundantly satisfied that the charge, viewed in its entirety, adequately, objectively and fairly instructed the jury as to the law applicable in this case. And if the inclusion of the *Connick* balancing-test language prejudiced any party, it prejudiced the plaintiff, not the defendants. There is no cause to now order judgment after trial in defendants' favor. *See*, Fed.R.Civ.P. 61.

### 3. A matter of public concern

Defendants contend that the court erred in concluding that plaintiff's speech addressed a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690.

■ At issue in this case was plaintiff's refusal to say what his superiors wanted him to say about changes they proposed in Lotto, a State of Connecticut lottery game.[3] Plaintiff, at the time he was terminated, was Unit Head of the Connecticut Lottery. He testified that his superiors wanted him to present the proposed changes in "positive" light. He agreed to present the plan in a "balanced"

manner, but refused to give it an overall rosy endorsement that ignored the plan's inherent risks. He feared the changes would undermine Lotto sales and dry-up the state's Lotto revenue stream. Taking into account the "content, form and context" of the speech in which plaintiff refused to engage, the court concluded at the time of trial, and concludes again here, that it addressed a matter of public concern. *Id.*

### 4. Special Verdict Forms

Defendants contend that the court erred in refusing to submit their special verdict questions to the jury. And they now argue that the jury's verdict was inconsistent with the evidence. Plaintiff counters that defendants have waived their right to raise an inconsistency claim.

■ "A case-by-case application of the familiar principles of waiver ..." is used to determine whether an inconsistent-verdict claim has been waived. *Denny v. Ford Motor Co.*, 42 F.3d 106, 111 (2d Cir.1994). And since "there is no clear definition in our case law ..." that marks the distinction between Rule 49(a) verdicts and Rule 49(b) verdicts, it is "desirable" that courts apply this rule to both. *Id.*

The law in this area, though instructive, does not lead the court to a definitive answer. *Compare Manes*, 801 F.Supp. 954 (D.Conn.), *aff'd* 990 F.2d 622 (2d Cir.1993) (Failure to raise a timely objection to the jury verdict, prior to the jury's discharge, constitutes a waiver and prohibits using verdict inconsistency as a basis for a new trial regardless of whether the verdict is governed by Fed. R.Civ.P. 49(a) or (b)), *and United States Football League v. National Football League*, 842 F.2d 1335 (2d Cir.1988) (failure to raise inconsistency before jury was discharged was waiver) *and Haskell v. Kaman Corp.*, 743 F.2d 113 (2d Cir.1984) (failure to raise inconsistency before jury was discharged was waiver), *with Denny*, 42 F.3d at 111 (no waiver when proper objection is made before jury is instructed and resubmission would not resolve alleged inconsistency); *see also Lavoie v. Pacific Press & Shear Co.*,

---

**3.** The changes involved increasing the odds of winning from 3,800,000 to 1 to 7,100,000 to 1.

975 F.2d 48, 55 (2d Cir.1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection.") (citations omitted).

Nor are the relevant procedural facts particularly decisive: Plaintiff counsel and defense counsel expressly agreed upon the verdict forms and the damages form sent to the jury in this case. In fact, not only did they agree upon these forms, they *jointly drafted* these forms. *See* Tr. [Document 161] at 80. Defense counsel did not raise their inconsistency concerns after the verdict was handed down (before the jury was discharged), nor did they seek resubmission. And, unlike the *Denny* verdict, any inconsistency defendants saw in the verdict here could have been resolved by resubmission to the jury. However, immediately after the court's reading of the charge, Defense counsel did object to the court's failure to use their special verdict forms; and this, in light of *Denny*, weighs in their favor.

Having said all this, it is unnecessary for the court to decide whether defendants have waived their inconsistency claim, because the defendants' contention about inconsistency is simply without merit. As the court has repeated throughout this opinion, there was ample evidence at trial to support the verdict handed down.

### 5. Reason for termination

■ Defendants allege that "[t]he court erred in refusing to direct a judgment that plaintiff was terminated for refusing to carry out an order of his superior and not because he exercised his First Amendment right. . . ." Defendants' Memorandum in Support of Motion For Judgment After Trial [Document No. 147] at 15. This position completely disregards the evidence that was presented and the standard defendants must cross to prevail on their motion: "[j]udgment as a matter of law is proper under Fed. R.Civ.P. 50 only if, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Caruso,* 47 F.3d at 32. So, once again, defendants' argument boils down to an expression of dissatisfaction that the jury believed plaintiff's story over theirs; and this is hardly grounds for granting their motion.

### 6. Defendants as employers

■ Defendants' argue that they are entitled to judgment as a matter of law on plaintiff's wrongful termination count because they are not "employers" within the meaning of Conn. Gen.Stat. §§ 31–51m and 31–51q.[4] Plaintiff's wrongful termination claim, however, was not brought pursuant to Conn. Gen.Stat. §§ 31–51m and 31–51q. Rather, it was a common law cause of action; and it was based upon a doctrine which protects employees from being terminated for reasons that violate public policy. *See Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 474, 427 A.2d 385 (1980); *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 572, 479 A.2d 781 (1984).

Plaintiff alleged he was terminated for exercising his free speech rights, and that the termination was, therefore, wrongful, retaliatory and a clear contravention of public policy. He maintained that a general public policy against such discharge exists and is evidenced by the First Amendment to the United States Constitution, Article First, Section Eight of the Connecticut Constitution, and Conn. Gen.Stat. §§ 31–51m and 31–51q. *See* Plaintiff's Second Amended Complaint Revised to Conform to the Evidence and Court Rulings [Document No. 152] at 25. In other words, plaintiff pointed to the principles or policy considerations *underlying* Conn. Gen.Stat. §§ 31–51m and 31–51q as evidence that Connecticut, in general, frowns upon wrongful, retaliatory terminations. He *did not* allege his termination violated these statutory sections.[5] And the testimony and

---

4. Conn. Gen.Stat. § 31–51m states: " 'Employer' means any person engaged in business who has employees, including the state and any political subdivision of the state." Section 31–51q does not contain an express definition of "employer".

5. Plaintiff's Second Amended Complaint [Document No. 41] included counts which expressly alleged violations of Conn. Gen.Stat. §§ 31–51m and 31–51q. These counts were withdrawn by plaintiff.

evidence admitted and the charge to the jury ensured there was no confusion about this issue.

The Connecticut Supreme Court, in *Sheets*, purposely left undecided "whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy." *Sheets*, 179 Conn. at 480, 427 A.2d 385. And the court, in the present case, was mindful of this open question when it allowed plaintiff to point to the policy considerations underlying §§ 31–51m and 31–51q without alleging an express violation of these sections.[6]

At the time of trial, the court concluded that the defendants, sued in their individual capacities, need not be "employers" within the *statutory* meaning of §§ 31–51m or 31–51q to be liable for a *Sheets*–type, *common law* wrongful termination.[7] For the reasons stated above, it holds fast to that decision.

**7. Qualified Immunity; immunity pursuant to Conn. Gen.Stat. § 4–165**

On January 9, 1995, a month before this case was referred here and nearly a year before trial of this matter commenced, Judge Covello ruled that defendants were "not entitled to qualified immunity as to the plaintiff's first amendment freedom of speech claim." *See* Ruling on Defendants' Motion For Summary Judgment/Motion To Dismiss [Document No. 48] at 13. Qualified immunity is a question of law for the court to resolve and is appropriately raised on a motion for summary judgment. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow*, 102 S.Ct. at 2738, 457 U.S. at 817–19).

Applying these standards to the undisputed facts of this case, Judge Covello concluded that plaintiff's right to freedom of speech was clearly established, and was a right of which a reasonable person should have known. Accordingly he denied defendants' motion for summary judgment on qualified immunity grounds. This court, at the time of trial, again considered defendants' qualified immunity claims and determined that this defense was not available to them. *See* Tr. [Document No. 159] at 22.

Defendants have raised a second immunity issue—immunity to the wrongful termination claim pursuant to Conn. Gen.Stat. § 4–165.[8] The problems with this argument were discussed in detail in *Schiff v. Kerrigan*, 625 F.Supp. 704, 707, n. 7 (D.Conn.1986). There, "the defendants argue[d] that section 4–165 impose[d] liability on the state for their actions, making the state the real party in interest, and hence bringing [the] suit under the umbrella of the Eleventh Amendment." *Id.* The court rejected this argument, holding that § 4–165 did not protect the defendants from personal liability for violation of a constitutional right. *Id.* This reasoning is persuasive here, but is not precisely on point.

---

**6.** The court was mindful of other factors as well: 1.) The driving force behind the *Sheets* doctrine is that employees should not have foul decision making foisted upon them by their superiors. *Sheets*, 179 Conn. 471, 480, 427 A.2d 385 (1980) (employee should not be put to an election whether to risk criminal sanction or to jeopardize his continued employment). The plaintiff in this case alleged he would have had to lie, on the record, to avoid termination; and 2.) The facts alleged by plaintiff, if proved, would amount to more than an "incidental effect on public policy." *See Battista v. United Illuminating Co.*, 10 Conn.App. 486, 497, 523 A.2d 1356 (1987).

**7.** *See De Paolo v. New York, New Haven & Hartford R.R. Co.*, 198 F.Supp. 12, 14 (D.Conn.1961)

("The existence of a legal relationship of employer and employee (formerly called master and servant) between two persons depends upon whether the former has the right to direct, control and supervise the latter in the performance of his work.").

**8.** Conn. Gen.Stat. § 4–165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state...."

Plaintiff's wrongful termination claim was brought against the defendants in their individual capacities and was rooted in the protections of the First Amendment to the United States Constitution and the policy considerations that support it. It was not, however, truly a constitutional claim. It was a state claim, over which the court exercised pendent jurisdiction. This is not to say that the *Schiff* reasoning should not apply in this case. The distinction noted simply makes the question a closer one.

Apart from the *Schiff*/Eleventh Amendment reasoning, there is another consideration which decidedly tips the balance against the defendants. Plaintiff here sought—and was awarded—punitive damages. In other words, he alleged (and proved) the defendants' conduct was wanton, reckless or malicious, arguably taking his claim outside the scope of § 4–165.

### 8–9. Evidentiary rulings: Connecticut Attorney General's opinion, prior state court decisions

Defendants claim the court abused its discretion in excluding from evidence an opinion of the Connecticut Attorney General and prior state court decisions. The court, at the time of trial, entertained extensive argument on these issues; and it weighed carefully the thoughtful arguments put forth by both sides. In the end, it excluded these particular items from evidence pursuant to Fed. R.Evid. 403. *See* Tr. [Document No. 159] at 21–27. That decision was not undertaken lightly and was not an abuse of discretion.

### 10–12. Objections to the charge

■ Finally, defendants allege that the court's refusal to charge on certain items constitutes reversible error. Although, as it has stated, the court believes the charge, viewed in its entirety, adequately, objectively and fairly instructed the jury as to the law applicable in this case, *see Webb,* 936 F.Supp. at 1122, there are a few additional points worth commenting upon here. First, defendants explained to the jury that, in their opinion, plaintiff was entitled to apply for his pension benefits immediately upon his termination; and that his failure to do so amounted to a failure to mitigate his damages. Therefore, to the extent defendants were entitled to a charge on mitigation of damages and did not receive it, the latitude they were allowed in cross examination of plaintiff's expert eliminated or sharply curtailed any possible prejudice.

Defendants' next assertion—their claim that the court erred in failing to instruct the jury about the significance of alternative reasons for plaintiff's termination—is simply wrong. The jury charge read:

> The defendants may avoid damages if they can show that, even absent the deprivation of constitutional rights alleged by the plaintiff, the defendants would have taken the same action with regard to the plaintiff and, therefore, that even absent the constitutional violations alleged by plaintiff, the plaintiff would have suffered the same harm.

Tr. [Document No. 161] at 65. Lastly, the absence of an instruction on the lack of expert testimony did not prejudice the defendants in this case.

## III. CONCLUSION

For the reasons stated herein, defendants' Motion for a New Trial and/or Remittitur [Document No. 148] is **DENIED,** as is their Motion for Judgment After Trial [Document No. 146].