**Jack WEBB, Eugene Sterner, Fred Ryan, Alex Koulikas, Frances Kurau and William Collier, as individuals, and on behalf of a class of individuals similarly situated, Plaintiffs,**

v.

**GAF CORPORATION; GAF Employee Benefit Program for International Association of Machinists and Aerospace Workers, Johnson City Lodge # 1807; and GAF Employee Benefit Program for International Chemical Workers, Local # 306, Defendants.**

No. 85–CV–777.

United States District Court,
N.D. New York.

Jan. 24, 1996.

Hancock & Estabrook, Syracuse, NY (David E. Peebles, Martha Berry, of counsel), for Plaintiffs Jack Webb, Eugene Sterner, Fred Ryan and "IAM" Class.

Smith, Sovik, Kendrick, Schwarzer & Sugnet, P.C., Syracuse, NY, (Lawrence F. Sovik, of counsel), for Plaintiffs Alex Koulikas, Frances Kurau, William Collier and "Chemical Workers" Class.

Carpenter, Bennett & Morrissey, Newark, NJ, (Patrick Brady, Francis X. Dees, of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Presently before the court are cross-motions for post-trial relief from a special jury verdict rendered September 25, 1992 in a partial class action concerning retiree medical benefits. Oral argument was heard in Syracuse on December 4, 1992. In a bench decision the court decided defendant's motions to dismiss absent class members who had either failed to respond to interrogatories or indicated their desire to opt out. Transcript of Bench Decision, Dec. 4, 1992, Document ("Doc.") 208, at 3–4, 5, 8. In a subsequent order the court preliminarily enjoined defendants from raising the medical plan premiums charged to the class represented by plaintiffs Webb, Sterner, & Ryan, in accordance with the special verdict of the jury. Jan. 3, 1995 Order, Doc. 216. Defendants thereafter moved to stay the injunction pending appeal. That motion was denied. March 8, 1995 Order, Doc. 221.

The court has painstakingly considered the multiple submissions of the parties and is now prepared to dispose of the remaining post-trial motions. The following constitutes the Memorandum–Decision and Order of the court.

### I. BACKGROUND

The two plaintiff classes consist of early retirees from defendant GAF Corporation who were members of two labor unions: the International Association of Machinists and Aerospace Workers, Johnson City Lodge # 1807 ("IAM class") and the International Chemical Workers Union, Local # 306 ("Chemical Workers class"). The classes were certified only as to claims arising under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), and section 301 of the Labor

Management Relations Act of 1947, 29 U.S.C. § 185, also known as the Taft–Hartley Act. *See* Order Granting Class Certification, Doc. 56; Corrected Order Granting Class Certification, Doc. 59.

In early 1973 the IAM union and GAF commenced negotiating a new collective bargaining agreement ("CBA") to replace the one due to expire in June of that year. One of the matters discussed was health insurance for early retirees. The process resulted in the inclusion of the following provision in section 73 of the 1973–75 CBA:

> Employees electing early retirement on or after 7/1/73
>
> who are members of the active employee medical plan may continue to carry the active employee medical plan until eligible for Medicare at which time they will be covered by the existing Retiree Medical Plan. The cost to the early retiree of the active plan will be $3/month for the employee and $3/month for the spouse and/or family.

Exhibit ("Exh.") A attached to Affidavit ("Aff.") of Francis W. Gaube, Doc. 132, at 28. The CBA expired on July 1, 1975. The provision in section 73 was repeated in the agreements covering the periods 1975–77, 1977–79, 1979–81, and 1981–83, with certain eligibility changes not relevant here. For terms of the medical plans, including deductibles and benefit levels, union members were referred to certain brochures known as summary plan descriptions in ERISA terminology.

The Chemical Workers union bargained for similar early retiree medical benefits in 1974. The discussions on this point were reduced to a Memorandum of Understanding ("MOU"). Item Six of the MOU contained language identical to that portion of the IAM CBA quoted above, except the date set for the commencement of the benefits was April 4, 1974. Exh. A attached to Chemical Workers Class Notice of Motion, Doc. 191. This provision of the MOU was *not* incorporated into the Chemical Workers' 1974–76 CBA, nor into any subsequent two-year agreement.

GAF started instituting premium increases for early retirees in 1984. The IAM class claims that the benefits prescribed in the section 73 early retiree provisions in the five CBAs from 1973 to 1983 were intended to vest on the date of retirement, precluding any subsequent increase in premium or deductible, or decrease in benefit level. The Chemical Workers class claims the 1974 MOU manifested the same intention that medical benefits vest for the life of the retiree. After a two week trial in September of 1992, the jury found the following in its answers to interrogatories in a special verdict form: [1]

1. The premiums specified in section 73 of the five IAM CBAs in question for early retirees under 65 who wished to continue their coverage under the regular employee medical plan were intended by the parties to the labor negotiations to remain fixed, vesting at the date of retirement. Jury Verdict Form, Court Exh. 3, at 1.

2. The terms of medical coverage (including deductibles) for the IAM class early retirees under 65 who elected to continue the regular medical plan were *not* intended to remain fixed. *Id.* at 2.

3. IAM class early retirees reaching age 65 were entitled to no-cost coverage under the retiree medical plan in existence at the date of retirement (including a lifetime Medicare supplement of $5,000). *Id.*

4. The terms, including deductibles, of the retiree medical plans insuring IAM class early retirees who had attained the age of 65 were *not* fixed. *Id.* at 3.

5. Item six of the 1974 MOU between the Chemical Workers and GAF was *not* intended to continue through the three Chemical Workers CBAs between 1976 and 1982. *Id.*

---

**1.** Strictly defined, the term "special interrogatories" refers only to interrogatories that accompany a general verdict. When the jury is only tasked to answer a list of interrogatories without giving a general verdict, that list is called a "special verdict." *See Floyd v. Laws,* 929 F.2d 1390, 1395 (9th Cir.1991). Nevertheless, most judges and trial lawyers appear to use the terms interchangeably. For clarity's sake, the jury in the instant matter returned a "special verdict," i.e., no general verdict.

In accordance with the findings in questions 1 and 3, GAF has been preliminarily enjoined from charging IAM class members greater premiums for early retiree medical benefits than those allowed in section 73 of the five IAM CBAs.[2] Jan. 3, 1995 Order, Doc. 216. The Chemical Workers class has received no relief. Pending in the cross-motions sub judice are: the IAM class' motions for judgment as a matter of law regarding questions 2 and 4 of the special jury verdict, for referral of the matter to a magistrate judge or special master for the calculation of damages, for discontinuance without prejudice of all nonclasswide claims of the IAM name plaintiffs, and for a permanent injunction against GAF; the Chemical Workers class' motion for judgment as a matter of law, or alternatively, for a new trial; and GAF's motion for judgment as a matter of law upon questions 1 and 3 of the special verdict, or in the alternative, for a new trial limited to those questions. Analysis commences below, beginning with the Chemical Workers' request for post-trial relief.

## II. DISCUSSION

### A. Chemical Workers

The Chemical Workers class move pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure for judgment as a matter of law or a new trial on the issues decided against them at trial. The burdens the movants bear for the two motions differ. Addressing the j.n.o.v. motion first, a party bearing the burden of proof at trial who seeks judgment as a matter of law must show that "the evidence in favor of the movant is so overwhelming that the jury could rationally reach no other result." *Granite Computer Leasing v. Travelers Indemnity Co.*, 894 F.2d 547, 551 (2d Cir.1990).[3]

The "overwhelming" evidence cited by plaintiff Chemical Workers is the testimony of William Bellnier and Robert Silvanic. Chemical Workers Memorandum ("Mem.") of

Law, Doc. 192, at 3. This "uncontradicted" evidence, it is said, conclusively proved that the benefits described in the 1974 MOU were intended by the negotiators to continue. *Id.* at 4. The jury though was not obligated to accept even uncontradicted testimony. *E.g., Broadcast Music Inc. v. Havana Madrid Restaurant Corp.*, 175 F.2d 77, 79–80 (2d Cir.1949). Moreover, the jury could rationally have credited this evidence tending to show the early retiree benefits for the Chemical Workers were not intended to continue into perpetuity: the 1974 MOU explicitly expired on June 30, 1976; item six of the MOU was not incorporated into any CBA between GAF and the Chemical Workers; and the witness Bellnier testified on cross-examination that he did not recall any discussion between GAF and the Chemical Workers about the duration of the early retiree medical benefits described in the MOU. Testimony of William A. Bellnier, Exh. B, Doc. 197, at 223–24. The inferences the jury could reasonably draw from these observations alone negates any contention that the evidence in favor of the Chemical Workers was "overwhelming."

In their second argument the Chemical Workers claim that a new trial is required since the jury's partial special verdict in favor of the IAM class is inconsistent with their denial of all claims of the Chemical Workers. It is true that "[w]hen a jury returns a verdict by means of answers to special interrogatories, the findings must be consistent with one another," else a new trial must be ordered. *E.g., Crockett v. Long Island R.R.*, 65 F.3d 274, 278 (2d Cir.1995). But there is no necessity for a new trial when the jury returns seemingly inconsistent verdicts with respect to separate *claims*. *See Malm v. United States Lines Co.*, 269 F.Supp. 731, 731–32 (S.D.N.Y.), *aff'd*, 378 F.2d 941 (2d Cir.1967) (per curiam). The rule is no different when facially inconsistent findings are returned for different *parties*.

---

**2.** Since all IAM class members are currently 65 or older, *see* Letter from David E. Peebles, Jan. 7, 1994, the present injunction pertains only to question 3 of the special verdict. The jury's findings in question 1, however, are pertinent to the calculation of damages.

**3.** The *Granite Leasing* case actually discussed the standard in terms of a directed verdict. The standards, however, are identical. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 121 (2d Cir.1984); Fed.R.Civ.P. 50(a) 1991 advisory committee notes.

*See Will v. Comprehensive Accounting Corp.,* 776 F.2d 665, 677–78 (7th Cir.1985), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986).

 But it is not even clear that an inconsistency exists. Different facts distinguished the status of the Chemical Workers and IAM classes—that is why they were certified as two separate plaintiff classes in the first place. *See* Oct. 14, 1988 Memorandum–Decision and Order ("MDO"), Doc. 44, at 12. The early retiree medical benefits for the Chemical Workers only appeared in the 1974 MOU, while the provisions for the IAM class were included in five consecutive CBAs. The jury could have reasonably inferred that different intents as to the duration of the benefits were manifested by these different facts. Thus, the asserted inconsistency can be easily reconciled based on the factually distinct positions of the parties. The court is obligated to adopt a reconciliation that harmonizes facially inconsistent answers to special interrogatories, and it does so here. *Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 890 (2d Cir.1988); *Machleder v. Diaz,* 801 F.2d 46, 57 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987).

 A new trial will also be ordered when the court is "convinced that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987); *accord Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 875 (2d Cir.1992). No miscarriage or serious error is apparent in the jury's findings against the Chemical Workers, for many of the same reasons the court has rejected their other arguments. In addition to the inferences the jury could have drawn from the fact the 1974 MOU early retiree benefits were not incorporated into any CBA, the jury could have rationally believed the testimony of Ronald Seitz, GAF's one-time Director of Employee Benefits over that of the plaintiffs' witnesses. *See, e.g.,* Testimony of Ronald J. Seitz, Doc. 230, at 11–13.

Because the evidence was by no means overwhelmingly in favor of the Chemical Workers class, judgment as a matter of law is not appropriate. Since there is no inconsistency in the jury's answers to the special interrogatories that cannot either be reconciled, or is of the kind requiring a new trial, that motion is also denied. Nor has a miscarriage or error of sufficient magnitude transpired so as to mandate a new trial. The jury's special verdict findings against the Chemical Workers class were supported by evidence sufficient enough that the court will not disturb them.

## B. GAF

 The court turns now to the post-trial motions of the defendants GAF Corporation and GAF Employee Benefits Programs, referred to collectively as "GAF." Defendants have moved for judgment non obstante veridicto upon questions 1 and 3 of the special verdict rendered in favor of plaintiff IAM class, or alternatively, for a new trial. Judgment as a matter of law for the party without the burden at trial is generally appropriate when, viewing the evidence in a light most favorable to the nonmovant and without weighing the credibility of witnesses, the court concludes that no reasonable juror could find otherwise. *See, e.g., Gibeau v. Nellis,* 18 F.3d 107, 109–10 (2d Cir.1994). Whether or not to grant a new trial is a decision vested in the discretion of the trial court, and is available upon various grounds provided the error was prejudicial to and not waived by the movant. *See generally* 6A James Wm. Moore, Moore's Federal Practice ¶ 59.08[1] (2d ed.1995).

In support of these post-trial motions, GAF avers that the relevant language of the IAM CBAs cannot be reconciled with the findings of the jury, that three of the court's jury charges were erroneous, and that the IAM class presented insufficient evidence to carry its burden as a matter of law. These allegations are dealt with seriatim.

### 1. CBA Language

 GAF's first point is at least a partial resurrection of its pretrial motion for summary judgment. *See* Defendant's ("Def.'s") Mem. of Law In Support of Motion for Summary Judgment, Doc. 129. Defendant urges

the court to reconsider its 1988 decision that the provisions for early retiree medical benefits in the CBAs were ambiguous on the question of duration and vesting. Oct. 14, 1988 MDO, Doc. 44, at 17–19. Beyond that, GAF claims that the jury's answers—determining that premiums but not terms of the medical plans vested—cannot be reconciled with the contract language. Many of the supplemental letter briefs submitted by GAF and IAM concern this issue.

The principal debate continues to be whether or not the IAM CBA retiree benefit provisions were ambiguous on the issue of vesting, thus allowing recourse to extrinsic evidence to help determine the intent of the parties. GAF adheres to its position that "extrinsic evidence need not be considered when the collective bargaining agreement is silent on the vesting of benefits." Letter–Brief from Francis X. Dees, May 17, 1993, Doc. 210, at 3. Since the CBAs have explicit expiration dates, GAF argues the parties must expressly say if they intend certain benefits to last beyond the term of the contract. Id. at 3. The IAM class contends that the interplay of the CBA and the summary plan descriptions creates ambiguity on the issue of vesting. Mem. on Behalf of the IAM Plaintiff Class In Opposition to Def.'s Post–Trial Motions, Doc. 203, at 4–6.

The controversy can be reduced to the question of whether the rationale of Yard–Man, championed by the IAM class, or Senn, whose approach is advocated by GAF, should be followed. Compare generally UAW v. Yard–Man, Inc., 716 F.2d 1476 (6th Cir. 1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984) with Senn v. United Dominion Indus., Inc., 951 F.2d 806 (7th Cir.1992), cert. denied, 509 U.S. 903, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993). Yard–Man emphasized the intent of the parties in determining whether or not a CBA provided for vestment of retiree welfare benefits. See 716 F.2d at 1479. The explicit language of the provision is the foremost consideration, but it must be read in the context of the negotiations that created it. Id. The document should be viewed as an integrated whole, and interpretations which render promises nugatory or illusory are eschewed.

Id. at 1479–80. Yard–Man is also notable for its observation that retiree benefits are not likely to be left to the contingencies of future negotiations since the bargaining unions are not obligated to represent retirees; rather, they are "status" benefits that "carry with them an inference that they continue so long as the prerequisite status is maintained." Id. at 1482. In light of these rules of construction and inferences, the Sixth Circuit determined that the evidence of an intent to vest overrode the general durational clause of the CBA in question. Id. at 1482–83. In contradistinction, the Seventh Circuit in Senn held that "[t]he mere silence of Collective Bargaining Agreements and plan documents concerning the vestment of welfare benefits fails to give rise to an ambiguity." 951 F.2d at 816.

Senn has not enjoyed much influence outside the Seventh Circuit. Moreover, its holding has been softened by the subsequent decision in Bidlack v. Wheelabrator, 993 F.2d 603 (7th Cir.), cert. denied, 510 U.S. 909, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). The Seventh Circuit in that case, sitting en banc, reexamined Senn and rejected the "extreme position[ ]" that a "contract must either use the word 'vest' or must state unequivocally that it is creating rights that will not expire when the contract expires." 993 F.2d at 607. More significantly perhaps, the Wheelabrator court condoned the consideration of extrinsic evidence if a provision for retiree benefits was found to be ambiguous on the issue of duration. See id. at 609.

The majority unconvincingly distinguished Senn by characterizing that case as "silent" on duration while the language in the Wheelabrator CBA was merely "vague." See id. at 608. Specifically, the Wheelabrator CBA provided for the company to pay for retiree health coverage after the retiree reached age 65. Arndt v. Wheelabrator Corp., 763 F.Supp. 396, 398 (N.D.Ind.1991), rev'd sub nom. Bidlack v. Wheelabrator Corp., 993 F.2d 603 (7th Cir.), cert. denied, 510 U.S. 909, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). The CBAs also provided for health benefits for the spouses of deceased retirees. 993 F.2d at 608. By contrast, the Senn CBA only stated that "[t]he Company will continue for

retired employees[ ] the ... premium contribution of $3.90 per month and $4.00 Medicare 'B' refund." 951 F.2d at 808. The Seventh Circuit reasoned that the reference in the *Wheelabrator* CBA to the death of the retiree in the provision for widow or widower benefits created ambiguity on whether the benefits could be terminated prior to the retiree's death. *See* 993 F.2d at 608. Even if this court accepts the position that *Senn's* validity is unaffected by *Wheelabrator* (an interpretation rejected by the concurrence, *id.* at 610), the CBA language in the case at bar is more akin to the provision in *Wheelabrator* than that in *Senn.* The IAM CBAs provide that coverage for early retirees will continue until they are eligible for Medicare. Exh. A attached to Aff. of Francis W. Gaube, Doc. 132, at 28. Like the agreement in *Wheelabrator,* the IAM CBA has a reference to an event in the future (eligibility for Medicare instead of the death of the retiree) which raises the question whether coverage can be altered or terminated prior to that event. This was sufficient to create an ambiguity in *Wheelabrator* and it is enough here.

It is also revealing that the only court in the Second Circuit to evaluate the dialectic of the rules in *Senn* and *Yard–Man* expressly adopted the approach of the latter case. In *Joyce v. Curtiss–Wright Corp.* Judge Curtin decided that the *Senn* approach "unduly restricts courts in determining intent." 810 F.Supp. 67, 72 (W.D.N.Y.1992). As the district court in *Joyce* observed, *Yard–Man* has been more persuasive than *Senn. See, e.g., Keffer v. H.K. Porter Co.,* 872 F.2d 60, 62 & 64 (4th Cir.1989); *United Steelworkers of America v. Conners Steel Co.,* 855 F.2d 1499, 1504–05 (11th Cir.1988), *cert. denied sub nom. H.K. Porter Co. v. United Steelworkers of America,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989); *United Steelworkers of America v. Textron, Inc.,* 836 F.2d 6, 9 (1st Cir.1987); *H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs,* 755 F.2d 324, 328 (3d Cir.1985). It is also evident that the retiree health provisions in *Joyce,* like *Wheelabrator* and the matter sub judice but unlike *Senn,* made reference to future events that would terminate coverage thus begging the question whether the welfare benefits could

be withdrawn prior to the specified events. *See* 810 F.Supp. at 68, 72.

Other cases relied upon by GAF are unavailing. *Derrico v. Sheehan Emergency Hospital* is cited for the general proposition that "[r]ights and duties under a collective bargaining agreement do not otherwise survive the contract's termination at an agreed expiration date." 844 F.2d 22, 26–27 (2d Cir.1988). *Derrico* though did not involve the issue of whether retiree benefits were intended to vest. This court concurs that contractual rights generally terminate on an expiration date or upon triggering events agreed to by the parties. In the case at bar the court previously found that the IAM CBAs were ambiguous on what the expiration date or terminating events for the retiree benefits were—material issues of fact existed, warranting a jury trial, and extrinsic evidence was allowed to assist the jury in determining the parties' intent. *Derrico* is in no way inconsistent with the court's decisions in these proceedings.

GAF also puts its faith in *Local 1251 Int'l Union v. Robertshaw Controls Co.:* "If rights are to persist beyond the term of the collective-bargaining agreement, the agreement must so provide *or be susceptible of such construction.* " 405 F.2d 29, 33 (2d Cir.1968) (quoting *Zdanok v. Glidden Co.,* 288 F.2d 99, 105 (2d Cir.1961) (emphasis added), *aff'd,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962)). This court concluded that an ambiguity existed in regards to whether the IAM class retiree benefits persisted beyond the expiration of the CBAs, and the jury evidently found that the agreements were susceptible to such a construction. The broad propositions in *Derrico* and *Robertshaw* are not contrary to what has transpired in the instant case.

*Moore v. Metropolitan Life Insurance Co.* is inapplicable not because it states a general rule fully consonant with the rulings made by this court, but because the rule it sets forth applies in a different context. *Moore* involved an ERISA claim exclusively, not an LMRA claim, and the result reached was clearly limited to ERISA: "We therefore conclude that, absent a showing tantamount to proof of fraud, an ERISA welfare plan is

not subject to amendment as a result of informal communications between an employer and plan beneficiaries." 856 F.2d 488, 492 (2d Cir.1988). The plaintiffs in *Moore* apparently were salaried, not wage laborers. There was no collective bargaining agreement. The *Moore* court itself recognized that the principle it was promulgating might not hold true in a different milieu:

> While the use of language such as "lifetime" or "at no cost" might conceivably create a triable issue of fact on a contract theory, it does not constitute the kind of misleading behavior that would cause us to override plan documents and SPDs created pursuant to ERISA.

*Id.* at 493.

Although breach of CBA suits under the Taft–Hartley Act are governed by federal common law, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957), the substantive law as it has developed in the courts is largely traditional contract law informed by national labor policies, *see, e.g., International Union of Operating Engineers v. Hawkins Construction*, 929 F.2d 1346, 1349 (8th Cir. 1991). It is thus not surprising that the rule enunciated in *Moore* for ERISA claims is not ipso facto applicable to claims arising under section 301 of the LMRA. Other authorities GAF relies on suffer similar disabilities.

Finally we note that although the Second Circuit has not written definitively on whether *Yard–Man* or *Senn* represents the preferable approach, at least one panel has cited *Yard–Man* for the proposition that the question of vesting under a CBA is determined by the contract itself and by the parties' intent. *In re Century Brass Prods., Inc.*, 795 F.2d 265, 269 n. 2 (2d Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986).

In sum, the court's decision that the IAM CBAs were ambiguous on the issue of the duration of the early retiree health benefits was not in error. This ground is insufficient to support either a motion for judgment as a matter of law or for a new trial.

### 2. Jury Instructions

GAF next takes issue with three of the court's instructions to the jury. The standard for review of jury charges is "whether the entire charge, viewed in light of all the evidence, would tend to confuse or mislead the jury as to the principles of law that apply to the facts." *National R.R. Passenger Corp. v. 25,900 Sq. Ft. Parcel of Land,* 766 F.2d 685, 688 (2d Cir.1985). The error must appear, from a review of the record, to be prejudicial before a new trial will be granted. Fed.R.Civ.P. 61; 766 F.2d at 688.

### i. Contra Proferentem

GAF contends the following charge was prejudicial error:

> Another factor which you should consider in your resolution of ambiguity is the legal principle that contract language must be construed more strictly against the party who drafted it. Accordingly, if you find that the language of the various IAM collective bargaining agreements was drafted by representatives of GAF, the language should be construed more strictly against the defendants in this case.

Transcript of Jury Charge, Exh. A. attached to Aff. of Francis X. Dee, Doc. 200, at 33 (hereinafter "Jury Charge").

GAF argues that the doctrine explained in the charge, known as contra proferentem, is inapplicable in the collective bargaining context, and that it is more suited to bargaining situations in which the drafter holds disproportionate power. GAF submits that it was on a more or less level playing field with the IAM union, and that all CBA language was subject to negotiation.

The Second Circuit has not stated whether the rule of contra proferentem is applicable in the collective bargaining arena. But its approach to the doctrine in the interpretation of ERISA plan documents persuades the court that a jury can be informed of the existence of this rule of construction without error. In *Masella v. Blue Cross & Blue Shield* the court of appeals applied the doctrine in a de novo review of ERISA insurance plans. 936 F.2d 98, 107 (2d Cir.1991). In reviewing decisions under the arbitrary and capricious standard, however, the Second Circuit has twice declined to find error when

district courts did not apply the rule. *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 443–44 (2d Cir.1995); *O'Neil v. Retirement Plan For Salaried Employees of RKO,* 37 F.3d 55, 61 (2d Cir.1994). Although the policies related to the interpretation of CBAs and ERISA plan documents may differ, these cases suggest that no bright-line rules exist in this circuit respecting which factual scenarios are appropriate for the contra proferentem doctrine. Rather, whether or not to apply the doctrine, or instruct a jury on it, is left to the reflection and considered judgment of the trial court. Such a conclusion is consonant with the policy that district court judges are afforded "substantial latitude" in tailoring instructions for juries. *See, e.g., Thorsted v. Kelly,* 858 F.2d 571, 573 (9th Cir.1988).

The principal case relied on by GAF does not sway the court otherwise. The Ninth Circuit in *Northwest Administrators, Inc. v. B.V. & B.R., Inc.,* although expressing doubt as to the propriety of ever applying contra proferentem to a collective bargaining dispute, specifically declined to "rule out its application in all similar cases." 813 F.2d 223, 226 (9th Cir.1987). The issue before the court of appeals in *Northwest* was whether the district court erred in granting summary judgment based on three grounds including the contra proferentem doctrine—such a review is de novo. *Id.* at 225. The Ninth Circuit remanded, but did not proscribe the application of contra proferentem upon rehearing. Instead the panel advised that

> The district court could consider application of the doctrine of *contra proferentem* if it finds that Northwest was directly or indirectly responsible for the disputed language, that application of the doctrine will assist in determining the parties' intent and that application of the doctrine would effectuate the policy underlying ERISA in the particular circumstances before the court.

*Id.* at 226.

The jury was the finder of fact in the trial of the matter presently under consideration, and they had before them testimony from which they could conclude that GAF was the drafter of the CBA provisions in issue. *See, e.g.,* Testimony of William A. Bellnier, Exh.

B., Doc. 197, at 39, 40. As to its relative utility in determining the intent of the parties, the court notes that although the jury was not advised to apply the doctrine as a "last resort," *O'Neil v. Retirement Plan for Salaried Employees of RKO,* 37 F.3d 55, 61 (2d Cir.1994), the contra proferentem charge was merely one of many instructions the court gave concerning the interpretation of the CBAs. *See generally* Jury Charge, Doc. 200, at 16, 31–41. In the context of the other interpretative aids the court charged on, GAF's contention that undue emphasis was given to contra proferentem seems overblown. GAF argues that the instruction forced the jury "to find against GAF on the central issue of the meaning of the language used in the collective bargaining agreements." Def.'s Mem. of Law, Doc. 199, at 10. However, the jury also heard testimony from which they could conclude that GAF drafted the Memorandum of Understanding with the Chemical Workers union, *see, e.g.,* Testimony of William A. Bellnier, Exh. B, Doc. 197, at 95, and the same contra proferentem charge was given in relation to this document, *see* Jury Charge, Doc. 200, at 21. Yet the jury found in favor of GAF with respect to the Chemical Workers claims, belying the idea that the contra proferentem charge prejudicially overcame other indicia of the parties' intent.

In short, the court is of the opinion that the contra proferentem charge was not given in error. In the alternative, if it was error, it was harmless. Considering the evidence at trial, the entirety of the charge, and the findings of the jury, there appears to be no appreciable risk that the jury was confused or misled. Since there was no prejudicial error, neither a new trial nor judgment as a matter of law is appropriate. We move on.

#### ii. Illusory Promises

The defendants challenge the propriety of the following charge on illusory or nugatory promises:

> Moreover, as in all contracts, a collective bargaining agreement's terms must be construed so as to render none nugatory or meaningless, and to avoid illusory prom-

ises. Thus, for example, you may find that a promise by GAF to pay all but $3.00 per month of an early retiree's health care premiums, and all but $6.00 per month for family coverage until age 65, would be illusory if the benefits would not be guaranteed after the expiration of the contract, since relatively few employees would enjoy much of such a deferred benefit within the short life of contract. You may also find these promises to be illusory if GAF reserved to itself the discretion unilaterally to change the terms of medical coverage, including retiree contribution levels.

Jury Charge, Doc. 200, at 32–33.

Specifically, GAF contends the example following the general statement of law was legally incorrect and misleading. Defendants state that a promise is not illusory "because it commits the promisor ... for only a limited duration, or because the promisor's obligations are terminable," Def.'s Mem. of Law, Doc. 199, at 15, or "because it likely will result in only limited obligations or will benefit only a few persons," *id.* at 16. For support, defendants rely principally on Professor Williston and the *Restatement, Second of Contracts.*

The court prefers the guidance of the case law in this area to broad statements from the treatises. In *UAW v. Yard–Man,* discussed in Part II.B.1 above, the Sixth Circuit offered five reasons for its conclusion that the parties intended to vest benefits in retirees under a CBA, the third of which involved an apparently illusory promise vis-a-vis certain early retirees. 716 F.2d 1476, 1481 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). *Armistead v. Vernitron Corp.,* cited by the IAM class, also supports the proposition that retiree benefits provisions like the one in the instant case can be considered illusory. 944 F.2d 1287, 1296 (6th Cir.1991).

Perhaps most on point though is *Policy v. Powell Pressed Steel Co.,* 770 F.2d 609 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986). The retiree benefits provision of the CBA in that case read, in pertinent part:

The Company will provide and pay for the regular hospitalization and surgical benefits provided by it for any Employee who retires ... prior to reaching age 65. When said Pensioner reaches age 65, the Company will provide such Pensioner, at the Company's expense, supplemental medicare and major medical benefits. The Company will continue to provide at its expense, supplemental medicare and major medical benefits for Pensioners aged 65 and over.

*Id.* at 615.

The appellate panel in *Policy* decided this language manifested an intent that the mentioned benefits vest at retirement, otherwise the promises made would be "in substantial part nugatory and illusory." *Id.* In explanation of why this was so, the opinion offered the following illustration:

For example, if a sixty-two year old employee ... retired ... eight months before the collective bargaining agreement expired, and if the Company were correct in contending that the retiree's health insurance benefits ceased with the ... expiration of such agreement, then the Company's promise to provide supplemental Medicare and major medical benefits to the retiree when he reached age sixty-five would be of no value.

*Id.*

This court is of the opinion that the example of illusory promises it gave the jury in the trial of this matter was in a similar vein to the example quoted above. Note especially that the above example, like the charge to the jury in this case, does not rule out the possibility that some retirees will retire early and reach age sixty-five before the current CBA expired. Despite the possibility that a limited benefit might accrue to a very few persons, the *Policy* court still held that the Company's interpretation would render the retiree benefits provision nugatory. If the similarity between the examples in *Policy* and in this court's jury charge is not yet evident, consider the following hypothesis: A GAF employee and IAM union member could retire at age 55 on the very day that a two-year CBA with the applicable early retiree benefits provision quoted in Part I above went into effect. If we accept GAF's inter-

pretation, at the expiration of the CBA, GAF could unilaterally terminate or alter health benefits. However, the early retiree would only be 57. Hence, this result would seem to render illusory GAF''s promise that said retiree could continue the active employee medical plan at a cost of three dollars per month for himself and another three for his family until he was eligible for Medicare.[4]

Lest the reader think the Sixth Circuit is alone in holding that language like the sort in the IAM CBAs is potentially illusory, reference is made to the following cases that lend support to this particular aspect of *Yard–Man, Armistead,* and *Policy: Bonnell/Tredegar Indus., Inc. v. NLRB,* 46 F.3d 339, 344 (4th Cir.1995); *United Paperworkers Int'l Union v. Champion Int'l Corp.,* 908 F.2d 1252, 1260–61 (5th Cir.1990) (but disapproving *Yard–Man's* status benefits analysis, *id.* at 1261 n. 9); *United Mine Workers v. Nobel,* 720 F.Supp. 1169, 1178 (W.D.Penn.1989), *aff'd sub nom. Board of Trustees v. Int'l Union,* 902 F.2d 1558 (3d Cir.1990); *Jansen v. Greyhound Corp.,* 692 F.Supp. 1029, 1041 (N.D.Iowa 1987). If it still seems that this court relies too heavily on the labor law of the Sixth Circuit, it is perhaps due to the unusual opportunity the trial and appellate judges of that circuit have had to develop and expound on this area. Michigan and Ohio, after all, have traditionally been focal points of union activity. *See, e.g.,* Thomas R. Brooks, Toil and Trouble: A History of American Labor 72 (2d ed. 1974) (American Federation of Labor founded in Columbus, Ohio); *id.* at 181 (first strike of the Congress of Industrial Organization in Akron, Ohio); *id.* at 182–83 (describing United Auto Workers' genesis in Michigan).

Finally, the jury's split decision for IAM, not to mention its refusal of all the Chemical Workers' claims, suggests that the jury did not feel invited, much less directed "to find that retiree benefits had vested without regard to evidence of actual intent." Def.'s Mem. of Law, Doc. 199, at 15. The court's instruction also permitted the jury to find the IAM CBA early retiree provisions illusory "if GAF reserved to itself the discretion unilat-

erally to change the terms of medical coverage." Jury Charge, Doc. 200, at 32. In fact though the jury determined that IAM and GAF did *not* intend that any terms of coverage, other than premiums, vest at retirement. Jury Verdict Form, Court Exh. 3, at 2, 3. The same instruction was given in relation to the Chemical Workers class, Jury Charge, Doc. 200, at 20, but the jury obviously contemplated other evidence to find there was no intent to vest either premiums or terms for that union, *see* Jury Verdict Form, Court Exh. 3, at 3.

 Neither the instruction on illusory promises nor the accompanying example were in error. Even if they were, the results at trial confirm that, in the context of the complete charge, this single instruction did not prejudicially affect the jury's fact-finding. No post-trial relief can be founded on this ground.

### iii. 'Status' Benefits

 GAF excepts to this instruction:
Another factor which you may wish to consider is the nature of the benefits at issue in this case. Retiree benefits are, in a sense, status benefits which, as such, carry with them an expectation that they continue so long as the prerequisite status is maintained.

Jury Charge, Doc. 200, at 23.

This charge was followed by two caveats:
This is not to say the retiree insurance benefits are necessarily interminable by their nature. Nor does any federal labor policy presumptively favor the finding of interminable rights to retiree insurance benefits when the collective bargaining agreement is silent. Rather, as part of the context from which the collective bargaining agreement arose, the nature of such benefits simply provides another inference of intent.

Standing alone, this factor or expectation would be insufficient to find an intent of the parties to create interminable benefits. However, this contextual factor may, in your view, buttress other indicators of

---

4. Assuming, of course, that our 57 year old early retiree will not be eligible for Medicare until he

achieves age 65. *See* 42 U.S.C. §§ 1395c & 1395o (1988 & Supp. V 1993).

such intent which you may find in the language of the agreements and in other evidence in the record.

*Id.* at 23–24.

As an initial observation, it seems unlikely that given the cautionary language following the status benefits charge the jury could have disregarded all the evidence favorable to GAF and find for IAM based on this single instruction, even if it were erroneous. As it is, the court does not believe there was any error.

The charge clearly originates from *UAW v. Yard–Man,* 716 F.2d 1476, 1482 (6th Cir. 1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). Two decisions from the Western District have cited the status benefits analysis with approval. *See Joyce v. Curtiss–Wright Corp.,* 810 F.Supp. 67, 71–72 (W.D.N.Y.1992); *Eardman v. Bethlehem Steel Corp.,* 607 F.Supp. 196, 214–15 (W.D.N.Y.1984), *appeal dismissed,* 755 F.2d 913 (2d Cir.1985). GAF relies once again upon *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488 (2d Cir.1988), discussed in Part II.B.1 *supra,* for the contrary view.

■■■ *Moore* is inapposite. As explained previously, that case involved an ERISA claim, not a breach of CBA suit pursuant to the Taft–Hartley Act. *See id.* at 489. The *Moore* court expressly disclaimed any opinion about a contract theory case. *See id.* at 493. The court agrees with defendants that there is no presumption that ERISA welfare plans vest. But that is neither here nor there. Unions can bargain for vestment of retiree welfare benefits in a CBA. Whether a particular CBA so provides is a question of the language of the agreement and the intent of the parties. *In re Century Brass Prods., Inc.,* 795 F.2d 265, 269 n. 2 (2d Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986). The language having been found ambiguous, the question of the parties' intent was given to a jury in this case. The jury was instructed on a number of interpretative tools that it could in its discretion apply to the problem, including the status benefits instruction. Nothing in *Moore* prohibits this. At the risk of redundancy, the court also observes that it is difficult to believe any prejudice resulted from this charge, even if it was legally incorrect—this same charge applied to both the benefits promised in the IAM CBAs and the Chemical Workers' MOU. Yet the Chemical Workers received no relief. Jury Verdict Form, Court Exh. 3, at 3.

■■■ The qualifications following the status benefits charge demonstrate a pervasive flaw in GAF's motion for post-trial relief based on erroneous jury instructions: even if error occurred, that error must have prejudiced the movant. *National R.R. Passenger Corp. v. 25,900 Sq. Ft. Parcel of Land,* 766 F.2d 685, 688 (2d Cir.1985). To determine if one instruction was prejudicial, it must be considered in light of the *entire* jury charge. *Id.* Examining the entire charge, it is clear that the jury must have understood that the challenged instructions were on equal par with other charges involving the determination of the intent of the parties. *See* Jury Charge, Doc. 200, at 41 (jury should "not focus on any one aspect of these instructions" or "assume any single point of law is more important than any other," but should "consider the charge as a whole"). No charge was given preeminent authority, and many were phrased permissively. In relation to status benefits, the jury was instructed that "they may wish to consider" that factor. *Id.* at 23. They were cautioned to consider the status benefits analysis along with "other indicators" of the parties' intent. *Id.* at 24. This caveat reinforced an earlier charge that "[t]here are many factors which you may deem appropriate to consider in resolving" the ambiguity of the CBAs. *Id.* at 19. There is virtually no likelihood that these charges, in context, could have misled or confused the jury. As has been said, the very fact that the challenged instructions were equally applicable to the unsuccessful Chemical Workers' claims and to the IAM claim decided in GAF's favor contravenes the assertion that the jury decided the IAM CBAs provided for the vesting of retiree medical premiums without actually determining the intent of the parties.

Because no challenged jury charge was erroneous or prejudicial, defendant's motions for judgment n.o.v. and for a new trial must

be denied. The court now proceeds to the third argument in GAF's post-trial memorandum.

### 3. Evidentiary Errors

GAF finally contends that the testimony of a number of witnesses was admitted in error.[5] Specifically, defendant claims that the testimony of IAM and GAF negotiators about their subjective understanding of the retiree benefits provision was inadmissible; testimony of the understanding of IAM class members about the agreement was inadmissible; and testimony about representations made by GAF employees to IAM class members regarding the retiree benefits at issue was inadmissible.

Regarding the testimony of some these challenged witnesses, it should be initially noted that the jury was instructed that evidence allowed "for a particular and limited purpose" could only be considered for that purpose. Jury Charge, Doc. 200, at 11–12. The jury was also charged that contracts "cannot be based upon the secret or unexpressed intention of one party which has not been conveyed to the other party. Nor can a contract be based on the unexpressed, subjective understanding of one party as to the contract's meaning which was not conveyed by that party to the other party." *Id.* at 16. In its extrinsic evidence charge, the court cautioned the jury that any statements made by GAF employees to IAM retirees were to be considered "solely on the issue of the intent of the parties to help interpret the contracts in issue," and not "as evidence of other agreements or promises outside of the contracts." *Id.* at 40. In that same charge, the court gave the following instruction requested by defendants:

> You should consider whether the extrinsic evidence in the form of testimony relating to the bargaining history of retiree medical benefits establishes that an expressly stated intent and agreement by and between GAF and the Chemical Workers union and

the IAM union was made at the time the applicable provision was negotiated. . . .

*Id.* at 39.

These instructions focused the jury's attention on whether or not the parties' intended by their agreements to vest the premiums and terms of retiree health benefits. They did not direct or permit the jury to substitute subjective understandings for what was in fact intended by the CBAs and the MOU. The issue then is whether the challenged testimony was competent to help the jury discern the intent of the parties, and if inadmissible, whether the above-mentioned instructions cured any resulting prejudice.

■■■ We begin with the elementary proposition that the interpretation of ambiguous contract language is a question of fact and extrinsic evidence of the parties' intent is properly admissible. *E.g., Bourne v. Walt Disney Co.,* 68 F.3d 621, 629 (2d Cir.1995). The parol evidence rule is inoperative in these instances. *E.g., Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 26–27 (2d Cir.1988). Defendant points to the American Law Institute's *Restatement, Second* for the resonant principle that the undisclosed intention of a party is irrelevant to the interpretation of a contract, but as Professor Corbin observed, "the statement is almost certain to be misleading." 3 Corbin on Contracts § 538, at 71 (2d ed. 2d reprt. 1972 & Supp. 1994). By this the professor meant that the understandings of the parties may help divine what is being expressed in an ambiguous instrument. The testimony admitted in this case did not concern unexpressed intentions, but rather what the intentions expressed by the parties in the form of the CBA retiree benefits provision were.

■■■ GAF objected to the admission of testimony from negotiation participants about their understanding of the ambiguous provision. In support, they again point to *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488 (2d Cir.1988). And the court again finds *Moore* unhelpful. The Second Circuit in that case held that extrinsic evidence could

---

5. GAF characterizes this third line of argument as a challenge to the sufficiency or weight of the evidence presented by plaintiffs. It is evident

though that GAF means by this that the evidence would be insufficient, if the challenged extrinsic evidence were excluded.

not be used to interpret *unambiguous* provisions of ERISA plans. *Id.* at 489. In fact, the district court in that case had already determined that the relevant documents were unambiguous and that extrinsic evidence should not be considered, a decision not before the Second Circuit on appeal. *Id.* at 491.[6] Lest there be any doubt that the *Moore* court was speaking only to *un* ambiguous contract language, *Eardman v. Bethlehem Steel Corp. Employee Welfare Benefit Plans,* 607 F.Supp. 196, 198 (W.D.N.Y.1984), *appeal dismissed,* 755 F.2d 913 (2d Cir.1985) is distinguished on the very point that the district court in that case had determined that the disputed language was ambiguous. 856 F.2d at 492 n. 1. In the same footnote, *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402 (2d Cir.), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986) is harmonized with *Moore,* presumably because the *Amato* court affirms the dismissal of a claim over unambiguous contract language, *id.* at 1418, while simultaneously allowing extrinsic evidence to interpret a less clear provision, *id.* at 1420.

The court is of the opinion that testimony regarding the understandings of the parties of the IAM CBA retiree provisions was both competent and helpful to the triers of fact— other courts agree. In *Eardman,* for instance, the court heard the testimony of the defending corporation's former Manager of Employee Benefits. That witness testified as to his interpretation and construction of the disputed language. *See* 607 F.Supp. at 202; *accord Alexander v. Primerica Holdings, Inc.,* 967 F.2d 90, 96 (3d Cir.1992), *mandamus granted,* 10 F.3d 155 (3d 1993). Likewise, this court heard testimony from GAF's former manager/supervisor of employee relations, William Bellnier. Also in *Eardman,* as in the case at bar, several retirees testified as to their understandings and as to representations concerning the duration of their benefits made to them in "exit interviews." *See, e.g.,* 607 F.Supp. at 199–200;

*accord Alexander,* 967 F.2d at 96; *Taylor v. Continental Group,* 933 F.2d 1227, 1232 (3d Cir.1991); *Smith v. ABS Indus. Inc.,* 890 F.2d 841, 846 n. 1 (6th Cir.1989); *UAW v. Cadillac Malleable Iron Co.,* 728 F.2d 807, 809 (6th Cir.1984); *Bower v. Bunker Hill Co.,* 725 F.2d 1221, 1224 (9th Cir.1984).

The challenged extrinsic evidence is admissible as evidence of what the parties intended by the ambiguous contract language in the IAM CBAs. The court's instructions during testimony and in its jury charge mitigated any prejudice GAF may have suffered.

The court does not perceive any prejudice at all however. Mr. Bellnier, for example, also testified as to his understanding that the retiree benefits in the Chemical Workers' 1974 MOU were of a continuing nature, Testimony of William A. Bellnier, Exh. B, Doc. 197, at 115, 116, 118, yet the jury returned a special verdict against that plaintiff class. Given the dichotomous result, it is extremely unlikely that the jury took the challenged extrinsic evidence as a substitute for rather than mere evidence of the parties' intent. We find no prejudicial error or substantial chance of jury confusion in this contention.

This disposes of GAF's post-trial motions. In sum, the court denies defendant's motion for new trial and motion for judgment as a matter of law. The next task is to consider the post-trial motions of the plaintiff IAM class.

### C. IAM

The IAM plaintiff class seeks the following post-trial relief: judgment as a matter of law upon questions 2 & 4 of the special jury verdict form; entry of a permanent injunction precluding GAF from increasing the premiums for health coverage of the IAM class members; referral of the task of calculating damages to a magistrate judge; and discontinuance without prejudice of the name plaintiffs' nonclasswide claims. IAM does not ask for a new trial concerning questions 2 and 4,

---

**6.** Indeed, it is not clear which of the claims asserted at the district court were before the Second Circuit. The opinion details five counts at the trial level, including Count Two, a unilateral contract theory, and Count Three, an estoppel claim. *Id.* at 491. At the end of the next paragraph however the court of appeals states that "[b]ecause plaintiffs have abandoned Counts One, Two and Three on appeal, only the unilateral contact and estoppel claims are before us." *Id.*

though it will be clear from the following analysis that they would not be entitled to one anyway.

 The IAM class bases its motion for j.n.o.v. on a hybrid theory of inconsistent verdicts and weight of the evidence. Addressing the issue of inconsistency first, the court agrees that "[w]hen a jury returns a verdict by means of answers to special interrogatories, the findings must be consistent with one another, as they form the basis for the ultimate resolution of the action." *Crockett v. Long Island R.R.*, 65 F.3d 274, 278 (2d Cir.1995). If an inconsistency appears, the trial court must attempt to harmonize them by adopting a view of the case that resolves the conflict. *E.g., Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir.1988). If resolution is impossible without stretching reality beyond ration, a new trial should be granted. *Brooks v. Brattleboro Memorial Hosp.*, 958 F.2d 525, 529 (2d Cir. 1992). Given these principles, the court must ask whether the jury's findings in questions 2 and 4 that terms of retiree health coverage did not vest[7] are irreconcilably inconsistent with its determinations in 1 and 3 that premiums did vest.

The court perceives an *economic* inconsistency in the answers. For example, if premiums for health insurance are fixed, but the coverage terms are not, then presumably an actuary can calculate how to lower maximum benefit levels and raise deductibles or copayments until the fixed premiums adequately compensate for the insurer's exposure. Alternatively, if the premiums did not vest but the terms did, the premiums can theoretically be raised until they correlate to the risk presented by the fixed coverage terms.

But these answers are not *logically* inconsistent. Inconsistency would result if it were impossible that the answers to questions 2 and 4 be "no" if the answers to 1 and 3 were "yes." But they are not mutually exclusive: GAF and IAM could have bargained for the vesting of premiums but not terms. True inconsistency results when, for instance, in a tort suit an interrogatory asking whether the plaintiff has proven any damage is answered

"no" while the answer to another interrogatory purports to quantify the proven damages in dollars. *See Auwood*, 850 F.2d at 891. Logical, not economic consistency is the touchstone. *See, e.g., Crockett*, 65 F.3d at 278 (holding that "jury could not logically award all costs for the surgery and no damages for future pain and suffering"); *FDIC v. Fidelity & Deposit Co.*, 45 F.3d 969, 977 (5th Cir.1995) (test is "whether the answers may fairly be said to represent a logical and probable decision on the relevant issues"); *Hasenfus v. Secord*, 962 F.2d 1556, 1562 (11th Cir.1992), *cert. denied*, 113 S.Ct. 972, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993); *Royal Cup, Inc. v. Jenkins Coffee Serv., Inc.*, 898 F.2d 1514, 1521 (11th Cir.1990); *Aquachem v. Olin Corp.*, 699 F.2d 516, 521 (11th Cir. 1983); *Morrison v. Frito–Lay, Inc.*, 546 F.2d 154, 160 n. 9 & 161 (5th Cir.1977).

Limiting challenges to special verdicts to instances of logical inconsistency is particularly appropriate here. The examples of economic inconsistency given above are only theoretical, after all. There may be barriers preventing GAF from unduly lowering benefit levels, or from raising deductibles prohibitively. Such barriers may be the products of institutional policies or state regulation. The court will not indulge in idle speculation to set aside a consistent verdict for which relief may be fashioned.

 The other argument in IAM's motion for judgment as a matter of law upon questions 2 and 4 is that the weight of the evidence supports their theory. Since IAM bore the burden in this case, it must demonstrate that the evidence in their favor was "overwhelming." *Granite Computer Leasing v. Travelers Indemnity Co.*, 894 F.2d 547, 551 (2d Cir.1990). The evidence was simply not overwhelming. In rejecting the notion that the terms of the retiree benefits vested, the jury could have properly taken into account the fact that IAM CBAs expressly made reference to premiums, but not terms, and that GAF's cross-examination of several witnesses revealed no recollection of any talk of retiree benefit vesting. *E.g.*, Testimony of

---

7. The court notes that at least one term has vested: the lifetime cumulative Medicare supple-

ment of $5,000. *See* Jury Verdict Form, Court Exh. 3, at 3.

William A. Bellnier, Exh. B, Doc. 197, at 223. If the jury believed that the subject of the vestment of terms was neither spoken of nor reduced to writing, it could have reasonably concluded that the parties did not intend coverage terms to last beyond the expiration of the CBAs. Judgment as a matter of law consequently unavailable, and IAM's motion for it is denied.

Since this disposes of the substantive post-trial motions concerning the class actions tried in this matter, the time is now ripe to fashion lasting equitable relief for the IAM class and institute further proceedings for the determination of damages. Hence, the current preliminary injunction, Jan. 3, 1995 Order, Doc. 216, is now permanent. The scope of the injunction is made explicit in the conclusion of this opinion. The matter of calculating the damages to the IAM class caused by GAF is referred to the Honorable David R. Homer, United States Magistrate Judge.

GAF and IAM dispute whether the discontinuance of the name plaintiffs' nonclasswide claims should be with or without prejudice. GAF has not explained why the dismissal should be with prejudice. Federal Rule of Civil Procedure 41(a)(2) presumes that dismissals of actions by order of the court shall be without prejudice, unless the court provides otherwise. GAF also advances the argument that some of the nonclasswide causes of actions are state law claims preempted by Taft–Hartley and ERISA. Letter–Brief from Francis X. Dees, Doc. 215, at 2. But GAF has not specified which of the claims it believes are preempted, and the court is disinclined to speculate. Since the court is not aware of a reason why the dismissal should be with prejudice and defendant has not suggested any, the name plaintiffs' nonclasswide, noncertified claims are dismissed pursuant to Fed R.Civ.P. 41(a) without prejudice.

### III. CONCLUSION

In summary, the motion of the plaintiff Chemical Workers class for judgment as a matter of law or in the alternative, a new trial, is DENIED.

The motion of the defendant GAF for judgment as a matter of law or in the alternative, a new trial, is also DENIED.

The motion of the plaintiff IAM class for judgment as a matter of law is DENIED.

The motion of the plaintiff IAM class for a permanent injunction is GRANTED. Accordingly, it is ORDERED that defendants, together with their officers, directors, employees, and agents, are from this date forward hereby permanently enjoined and restrained from charging members of the IAM plaintiff class and/or such member's beneficiaries more than $3.00 per month for individual medical coverage, or $6.00 per month for family medical coverage, until such member attains the age of 65, and thereafter from imposing any cost upon members age 65 and over for medical coverage, including any cost for the cumulative $5,000.00 lifetime Medicare supplement, as provided in section 73 of the five consecutive IAM–GAF collective bargaining agreements from 1973 to 1983; and defendants, along with their officers, directors, employees, and agents are ORDERED to provide said medical coverage, namely the active employee medical plan until such member reaches 65 and the retiree medical plan in existence at the time of retirement for members 65 and over, to class members and/or their beneficiaries so long as premiums are paid in accordance herewith.

The motion of the plaintiff IAM class for referral of this matter to a magistrate judge for the determination of damages so that a final judgment may be entered is GRANTED. This matter is referred to the Honorable David R. Homer, United States Magistrate Judge, for further proceedings to calculate damages.

The motion of the name plaintiffs of the IAM class to voluntarily dismiss their nonclasswide, noncertified claims is GRANTED. It is hereby ORDERED that the claims of individual plaintiffs Jack Webb, Eugene Sterner, and Fred Ryan as to which class certification was not granted, namely all claims except those asserted under section 301 of the Taft–Hartley Act and the classwide

claims under section 502(a) of ERISA, be dismissed without prejudice.

So ordered.